In the Matter of the Estate of BETTIE HIRSCH, Deceased.

Surrogate's Court, Kings County, March 11, 1935.

*Samuel Silbiger*, for the petitioner.

*Melvin N. Greenhall*, pro se.

*Sol Deutsch*, for Louis Rothschild.

*Raphael H. Weissman*, for Julia S. Greenhall.

WINGATE, S.  Underlying the present application for compensation of an attorney is an interesting story of conspiracy and fraud, over which, in the end, as in most cases of popular fiction, virtue and justice have triumphed.

In 1929 Bettie Hirsch was eighty-six years of age.  She was widowed and childless, her nearest kin being a brother, Louis Rothschild, a sister who resided in Germany, and a considerable number of nieces, nephews and grandnephews.  During the last year of her life this brother induced her to transfer to him and his wife substantially all of her possessions, consisting of certain real property located at 971 Lincoln place, Brooklyn, two mortgages and certain shares of stock.

In an effort to render their ownership of this property still more impregnable, they induced her to execute a will by the terms of which all of her property other than certain nominal legacies was devised and bequeathed to Rothschild and his wife and under which they were named as executors.  An *in terrorem* clause, therein inserted, stipulated that even the meager benefits given to others than the Rothschilds should be forfeited in the event of a contest.

This situation being disclosed, following the death of Mrs. Hirsch on January 7, 1930, a niece of the decedent, Mrs. Julia S. Greenhall, undertook the somewhat monumental role of St. George in relation to the Rothschild dragon.  Her son was an attorney, and through him she retained the present applicant, Samuel Silbiger, in an attempt to overturn the carefully conceived and skillfully executed plot of the Rothschilds to divert to themselves the entire estate.

That this attorney performed his difficult task with unusual success and ability is best proved by the result.  On behalf of Mrs. Greenhall, he instituted an action in the Supreme Court to set aside the conveyances as the product of undue influence and fraud. The action was representative in form, on behalf of her and all those similarly situated who might desire to make themselves parties thereto.  No others joined in the proceeding, no doubt preferring to permit her and her attorney to bear the burden of the conflict, realizing that success, if attained, would as greatly inure to their benefit if they adopted such a course as if they came forward and participated in the fray.

The battle was of long duration, extending from Special Term, through the Appellate Division and culminating in the Court of Appeals (260 N. Y. 474), which upheld the original determination that both the conveyances and the will which had been secured from the decedent by the Rothschilds were the products of undue influence and fraud, and setting them aside.

As the result of this litigation and of accountings enforced against the Rothschilds in respect to their dealings with the property thus fraudulently secured, all property rightfully belonging to the decedent was returned to her estate.

The next step in the process of devolution was the probate of decedent's will executed on January 12, 1929, which, after some difficulty, was proved as one lost or destroyed.

It is for his services in the performances of these acts that the present petitioner seeks recompense. Whereas the salient features of the results accomplished have been rehearsed, the minute details of the protracted and exacting labors performed need not be reviewed. The result speaks for itself. The effect of the labor was to create the estate where otherwise none would have existed. The service was performed on a wholly contingent basis. The court is further satisfied from the testimony as a whole that no percentage or amount was fixed. Obviously no agreement binding upon the estate could have been made, both for the reason that no representative had, or could have been, appointed at the time the litigation was instituted, and because even had there been one, it would have been beyond his power to bind the estate in any specific sum, as a fiduciary has no power to bind his estate by contract. (*O'Brien* v. *Jackson*, 167 N. Y. 31, 33; *Austin* v. *Munro*, 47 id. 360, 366; *Matter of Meng*, 227 id. 264, 270; *Dodd* v. *Anderson*, 197 id. 466, 471; *Smith* v. *Peyrot*, 201 id. 210, 215; *Ferrin* v. *Myrick*, 41 id. 315, 324; *Matter of Van Slooten* v. *Dodge*, 145 id. 327, 332; *Parker* v. *Day*, 155 id. 383, 387; *Matter of Gorra*, 135 Misc. 93, 99.) Had success not crowned his efforts, he could have received nothing, and this fact must be considered in assaying the quantum of his recovery.

The basic question for decision is as to whether the remuneration to be allowed is to be charged upon the estate as a whole or merely upon the share thereof which will be payable to Mrs. Greenhall. The latter position is strenuously maintained by the Rothschilds.

The language of section 231-a of the Surrogate's Court Act places the determination of the source of the payment, whether " from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein," in the discretion of the surrogate.

It is well established that where the services of the attorney have resulted in benefit to the estate as a whole, the payment to him should be made from the entire fund and not merely from the distributive interest of the person on behalf of whom he primarily acted. (*Matter of Lounsberry*, 226 App. Div. 291, 293; *Matter of Frame*, FOLEY, S., 152 Misc. 475, 478; *Matter of Rosenberg*, 147 id. 517, 521; affd., 241 App. Div. 601; *Matter of Vorndran*, 132 Misc. 611, 612; *Matter of Chaves*, 143 id. 872, 873; *Matter of Conne*, 147 id. 116, 117.)

Here the main portion of the services for which recompense is sought were performed in the action in the Supreme Court, which, professedly and actually, was instituted and prosecuted and the results of which beneficially inured equally to every person interested in the estate of the decedent. It follows that the estate as a whole received the benefit and should pay therefor.

The argument of Rothschild that such service was not for his benefit, since by reason thereof he will receive somewhat less than one-half of the property which formerly belonged to the decedent instead of the whole thereof, as would have been the case had his fraud not received its fitting reward, involves the fallacy that the property which he would have received had his fraud gone unpunished would have been property of the estate. It would not. Under such circumstances there would have been no estate. Hence he could have received no estate property. It would have been property acquired by him in an *inter vivos* transaction. The net result to him in dollars and cents will be less than if the action had not been brought, but this is merely because he has been compelled to respond for the tort which he committed against the decedent in her lifetime. The present applicant created a valuable property right in the benefit from which Rothschild participates. The fact that such right was created at his individual expense by reason of his previous wrongful act is wholly beside the point. Rothschild received something, namely, a right to an estate distribution, which he would not otherwise have had, and for this he, and the others who received a share in the same species of property, must pay *pro rata* on a *quantum meruit* basis.

An attempt has been made to minimize the value of the services performed by asserting that the attorney should have joined as parties to the Supreme Court action all persons potentially interested in the estate so that the will might have been validly probated there. In this criticism the court cannot concur. The missing parties whose non-inclusion caused expense were infants. Had they been made parties to that proceeding, the allowances to their special guardians at Special Term and on the two appeals unques-

tionably would have cost the estate far more than the expense incurred by the method adopted.

Under all of the quite unusual circumstances disclosed, the court is of the opinion that the legal services performed should be requited by fifty per cent of the net estate. It cannot, however, agree that the assets should be sacrificed by a forced sale to make payment of this sum at the present time. It would, indeed, be a strange anomaly were this court to eulogize and reward the applicant for creating an estate in this case and in the next breath direct that the value of its assets be reduced to a minimum by dumping them on a market which was unwilling to pay their fair value.

A lien to the extent of fifty per cent of their value will be impressed upon all assets of the estate, to be resolved upon their sale. The court does not mean by this disposition of the matter that the representative is to be permitted to stand idly by and make no effort to liquidate. On the contrary, it is her duty to proceed diligently in efforts to sell the assets at a fair valuation and should immediately proceed to compel the Rothschilds to pay the sums already determined to be due from them. Should she fail to perform her obligations in this regard, the court will actively intervene to protect the rights of the attorney upon his making an appropriate demonstration of culpable non-feasance.

The final question in the case concerns the right of Melvin N. Greenhall to participate in the compensation of the petitioner. After carefully reviewing the conflicting testimony on this issue, the court is satisfied that it was agreed between the petitioner and Mr. Greenhall that the remuneration which should be allowed was to be equally divided between them. It follows that the lien for services which is to be impressed upon the assets of the estate will inure equally to the benefit of each.

As the administratrix has seen fit to displace the petitioner, he will turn over the papers in his possession to this successor, receiving the general lien upon the assets of the estate in lieu of his existing lien on the papers.

Enter decree on notice.