Mrs. Loanna Silvey JACOBS, Mrs. Lucille Silvey Beard, Mrs. Irma Kate Silvey Murphy, Individually, and as Co-Independent Executrices and Trustees of the Estate of Mrs. Moselle Silvey Pitner, Deceased, Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. No. 4329.**

United States District Court
E. D. Texas,
Tyler Division.

Nov. 22, 1965.

John M. Smith, of Roberts & Smith, Longview, Tex., for plaintiffs.

Stanley F. Krysa, U. S. Dept. of Justice, Washington, D. C., Wm. Wayne Justice, U. S. Atty., Tyler, Tex., for defendant.

SHEEHY, Chief Judge.

Mrs. Moselle Silvey Pitner, Mrs. Loanna Silvey Jacobs, Mrs. Lucille Silvey Beard and Mrs. Irma Kate Silvey Murphy, referring to themselves as custodians and beneficiaries of the Estate of J. E. Sexton, deceased, instituted this action seeking a refund of federal estate taxes in the amount of $75,840.19. Subsequent to the institution of such suit Mrs. Pitner, one of the original plaintiffs, died, and the other three original plaintiffs, in their capacities as Co-Independent Executrices and Trustees of the Estate of Mrs. Pitner, were substituted as party plaintiffs for Mrs. Pitner. The case was tried before the Court without a jury. A substantial portion of the facts were stipulated by the parties. From the stipulations, admissions in the pleadings and the evidence offered the pertinent facts are found to be as hereinafter stated.

The original plaintiffs were sisters and were the daughters of Mary Sexton Silvey, deceased, who was the sister of J. E. Sexton and W. H. Sexton. References made hereinafter to the plaintiffs will be to the four original plaintiffs unless otherwise stated. At times, for convenience, the four original plaintiffs also will be referred to hereinafter as the Sexton nieces.

On November 23, 1948, J. E. Sexton and W. H. Sexton, brothers, neither of whom ever married, executed their individual last wills and testaments, which were mutual wills. On October 30, 1952, W. H. Sexton died in Jacksonville, Cher-

okee County, Texas. Thereafter, his will was offered for probate and J. E. Sexton and Moselle Silvey Pitner qualified as independent executors of his estate. Thereafter, on March 1, 1958, J. E. Sexton died while living in a rest home in Jacksonville, Cherokee County, Texas. Prior to going to said rest home to live J. E. Sexton had lived in Johnson County, Texas.

On March 3, 1958, Gean Turner, Agnes Kirk and I. W. Kirk offered for probate in the County Court of Johnson County, Texas (the Probate Court) a document which purported to be the last will and testament of J. E. Sexton dated March 23, 1954, under the terms of which, with the exception of a bequest of $100.00 to each of his heirs at law and two other small money bequests, the J. E. Sexton Estate was left to Mrs. Agnes Kirk. Upon receiving information that said purported will had been offered for probate in Johnson County, the original plaintiffs herein had a conference and, after discussing the problem among themselves, went their separate ways to employ counsel. Each obtained the services of her own attorney or attorneys to represent her. Mrs. Murphy retained the services of the law firm of Roberts and Smith of Longview, Texas. Mrs. Beard also retained the services of Roberts and Smith. Each agreed to pay Roberts and Smith a fee of $25,000.00. Each was bound to pay said fee regardless of the outcome of any litigation and regardless of whether Mrs. Murphy and Mrs. Beard, or either of them, secured any of the property of J. E. Sexton. They also agreed to pay the expenses of any litigation as well as the necessary expenses incurred by their attorneys. Mrs. Jacobs retained the legal services of Gordon Wellborn, Esquire, of Henderson, Texas, under a fee arrangement whereby Wellborn was to receive one-third of whatever he might recover from the Sexton Estate for Mrs. Jacobs after any taxes due were paid and $25,000.00 in advance which Wellborn was not obligated to repay even if his efforts resulted in no recovery for Mrs. Jacobs. Mrs. Pitner retained the

law firm of Wynne and Wynne of Dallas, Texas, to represent her. She agreed to pay Wynne and Wynne a fee of $31,-250.00 which was to be paid regardless of whether she received any property of J. E. Sexton as a result of the efforts of Wynne and Wynne. She also agreed to pay any and all necessary and incidental expenses incurred in connection with such representation.

The attorneys hired by the four sisters were advised of the 1948 mutual will executed by J. E. Sexton. The attorneys representing said sisters gave consideration as to the best action to be taken in an effort to secure for each of the four sisters a share of the J. E. Sexton Estate. Although they considered doing so, the attorneys, for tactical reasons, decided against offering the 1948 will of J. E. Sexton for probate, and decided that the best course to pursue was to have Mary Sexton Silvey, surviving sister and sole surviving heir-at-law of J. E. Sexton, to contest the application for probate of the purported will filed by Gean Turner, et al., in Johnson County and have the Sexton nieces (the four original plaintiffs herein) file in the District Court of Rusk County, Texas, an action in trespass to try title for damages and suit to enforce mutual and contractual wills of J. E. Sexton and W. H. Sexton, naming in such action Agnes Kirk and Gean Turner among others as defendants therein. Such a suit, hereinafter referred to as the Rusk County case, was filed on May 7, 1958, and bore No. 23,318 on the docket of the District Court of Rusk County, Texas.

Prior to the filing of the Rusk County case, to wit, March 17, 1958, Mary Sexton Silvey contested the application for probate of the purported J. E. Sexton will filed by Gean Turner, et al., by filing in said Johnson County proceeding her Plea to the Jurisdiction, answer and contest to the application for probate filed by Gean Turner, et al. Subsequent thereto various amendments to the Plea to the Jurisdiction were filed on behalf of Mrs. Silvey.

In the Rusk County case the plaintiffs prayed for judgment for title and possession of the real property owned by J. E. Sexton at the time of his death, for damages in the amount of $50,000.00, that they be declared the sole and exclusive owners of all the properties owned by J. E. Sexton at the time of his death, that their title to said properties be quieted, that the cloud cast upon their title to said properties by the acts, conduct and manipulations of the defendants therein named be removed, for costs of suit, etc.

In July 1958, a hearing was had in the County Court of Johnson County on the application of Gean Turner, et al., to probate the purported will of J. E. Sexton. Following such hearing, which lasted approximately five days, the court entered an order denying Mrs. Silvey's Plea to the Jurisdiction and denying the application of Gean Turner, et al., to probate the purported will alleged to have been executed by J. E. Sexton on March 23, 1954. Thereafter, the proponents of said purported will timely appealed to the District Court of Johnson County, Texas, from the order of the Probate Court denying said purported will to probate. On November 26, 1958, the District Court entered an order in that proceeding staying further proceedings in the case pending the outcome of the Rusk County case.

On October 17, 1958, Mary Sexton Silvey, with leave of the court being had and obtained, intervened as a party plaintiff in the Rusk County case. On October 21, 1958, the trial of said Rusk County case commenced. The trial resulted in a jury verdict in favor of the plaintiffs and judgment was accordingly entered which, in effect, recognized the 1948 will of J. E. Sexton as being a mutual binding will and vested in the Sexton nieces title to all of the property owned by J. E. Sexton at the time of his death.

The defendants in the Rusk County case duly appealed from the judgment against them in that case to the Texarkana Court of Civil Appeals, which court affirmed the judgment of the trial court in all respects. See the opinion of the Court of Civil Appeals in Kirk et al. v. Beard et al., 334 S.W.2d 531, to which reference is made for all purposes, particularly as showing the contentions of the parties made in the Rusk County case and the provisions of the 1948 mutual wills of W. H. and J. E. Sexton. A timely appeal was taken by the defendants in that case to the Supreme Court of Texas, which on March 29, 1961, modified the judgment of the trial court and, as modified, affirmed same. See the opinion of the Supreme Court in Kirk et al. v. Beard et al., 162 Tex. 144, 345 S.W.2d 267, to which reference is here made for all purposes.

The effect of the decision of the Supreme Court of Texas, last above referred to, was that the Sexton nieces were the legal owners of all of the real and personal property owned by J. E. Sexton at the time of his death except the real property and improvements situated thereon located in Johnson, Hill and Somervell Counties, Texas. Since the ownership as to the latter properties was left open as a result of the Supreme Court's action, it became necessary to proceed with the appeal of the will contest matter in Johnson County.

Prior to the final disposition of the Rusk County case Mary Sexton Silvey died testate on July 3, 1959. The original plaintiffs herein were appointed Trustees and Independent Executrices of her estate. On July 23, 1962, said Trustees and Executrices were substituted as the contestants in the Johnson County will contest appeal.

In the latter part of January 1963 a trial de novo of the Johnson County will contest matter commenced in the District Court of Johnson County, Texas. The trial resulted in a jury verdict in favor of the contestants, and as a result of which judgment was duly entered in the District Court denying to probate the purported will of J. E. Sexton offered by Gean Turner, et al. While the proponents of the will gave notice of appeal from said judgment denying the will to probate, the appeal was subsequently

abandoned and such judgment long ago became final.

Sometime prior to the trial of the Rusk County case the attorneys representing the plaintiffs in that action, with the approval of said plaintiffs, associated two Rusk County lawyers, namely Vernon McDavid and Louis Wolfe, to assist them in such action. Arrangements were made to pay each a fee of $7,500.00 which was to be paid by the plaintiffs. Said attorneys took no part in the Johnson County litigation. As to the Johnson County litigation, plaintiffs' attorneys determined that it would be advisable to employ the Johnson County law firm of Walker, Baker and Altaras to assist them in the Johnson County litigation. Said Johnson County firm was so employed and was paid $15,000.00 for its services which was paid by the plaintiffs. The firm of Walker, Baker and Altaras took no part in the Rusk County case.

In connection with the services performed by their respective attorneys in the Johnson County will contest matter and the prosecution of the Rusk County case, the four original plaintiffs paid or will pay as attorneys' fees, court costs and related expenses the aggregate sum of $284,698.16 of which sum $187,137.79 was paid as attorneys' fees and the remainder of said sum was paid for court costs and related expenses. Said remaining sum included the sum of $66,271.39 paid to one F. L. Hurley as accountant's fees. The plaintiffs, in open court, waived their claim with respect to said fee paid Hurley which leaves the amount paid by the plaintiffs for court costs and related expenses to be the sum of $31,288.98. Thus the aggregate amount paid as attorneys' fees, court costs and related expenses claimed by the plaintiffs to be allowable as administrative expenses is $218,416.77, which was paid by the plaintiffs as follows: Mrs. Pitner the sum of $48,910.21; Mrs. Beard the sum of $40,985.41; Mrs. Murphy the sum of $40,969.67; and Mrs. Jacobs the sum of $87,561.48.

The estate tax return for the J. E. Sexton Estate, which was prepared by Q. C. Murphy, husband of Irma Kate Silvey Murphy, one of the plaintiffs herein, was filed on June 2, 1959. It revealed an estate tax to be due in the amount of $304,471.47. None of the attorneys' fees, court costs and related expenses incurred by the plaintiffs, and hereinabove set forth, or any other expenses of administration, were claimed on said return. None of the attorneys retained by the plaintiffs, except Mr. Smith of the firm of Roberts and Smith, had anything to do or performed legal services in connection with the preparation and filing of the estate tax return. Mr. Smith made one or two trips from Longview to Johnson County to obtain affidavits relative to the value of certain properties belonging to the Estate of J. E. Sexton, and that was the extent of his services performed in connection with the estate tax return.

The total value of the Estate of which J. E. Sexton died seized and possessed of, as shown by the final agreed values on the Federal Estate Tax return was the sum of $1,468,981.32.

On June 12, 1959, the District Director of Internal Revenue assessed the tax shown to be due on the tax return and collected the same and interest due thereon on June 26, 1959, by administrative levy on bank accounts belonging to J. E. Sexton. On May 31, 1962, a claim for refund was filed by the plaintiff, Mrs. Irma Kate Silvey Murphy, claiming a refund of estate taxes in the amount of $75,848.19, asserting that there were allowable expenses for attorneys' fees, court costs, etc. in the amount of $219,724.50, being the aggregate amount the plaintiffs paid or agreed to pay for attorneys' fees, court costs and related expenses in connection with the Johnson County will contest matter and the Rusk County case, including the sum of $66,271.39 paid to F. L. Hurley, all as hereinabove set forth. The claim for refund was denied and the instant action was timely instituted.

At the time of his death J. E. Sexton was receiving certain monthly oil royalties but, upon his death, the oil com-

panies paying said royalties discontinued the payment of same. However, subsequent to the decision of the Supreme Court in the Rusk County case the accumulated royalties were paid by the oil companies to the plaintiffs upon the plaintiffs giving the oil companies indemnity agreements. Also, subsequent to the Supreme Court's decision, government bonds owned by J. E. Sexton at the time of his death were cashed and ratably distributed to the plaintiffs. None of the plaintiffs received any income from any property owned by J. E. Sexton at the time of his death and passing to them until after the decision of the Supreme Court in the Rusk County case.

The 1948 mutual will executed by J. E. Sexton and in which Mrs. Moselle Silvey Pitner and W. H. Sexton were named as Independent Executors was never offered for probate. There has never been any formal legal administration of the Estate of J. E. Sexton. None of the plaintiffs in this cause, or anyone else, has ever been appointed or acted as administrator or executor of the Estate of J. E. Sexton. All of the attorneys' fees, court costs, etc., claimed by the plaintiffs herein to be deductible were paid by the individual plaintiffs from their individual assets, and none of such expenses were ever presented to or allowed by a Texas Probate Court.

The question for decision in this case is whether the attorneys' fees, court costs and related expenses paid by the plaintiffs, individually, and hereinabove set forth, constituted administration expenses which are deductible from the gross estate in computing the estate taxes due from the J. E. Sexton Estate.

█ It is a well recognized principle in federal tax law that the allowance of deductions does not turn on general equitable considerations but can only be had in those instances where there is a clear provision for same. Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; and New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

█ The pertinent statute is Sec. 2053 of the Internal Revenue Code of 1954 (26 U.S.C.A., 1958 ed., Sec. 2053). That statute provides, in effect, that for estate tax purposes there shall be deducted from the value of the gross estate such amounts incurred for "administration expenses" which are allowable by the laws of the jurisdiction under which the estate is being administered. The statute does not define "administration expenses." However, Sec. 20.2053–3(a) of the Treasury Regulations on Estate Tax (26 C.F.R., Sec. 20.2053–3), promulgated pursuant to said Sec. 2053, defines "administration expenses" as those actually and necessarily incurred in the administration of the decedent's estate, namely, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. It is further pointed out in said regulations that expenditures not essential to the proper settlement of the estate but incurred for the individual benefit of the heirs, legatees or devisees, may not be taken as deductions. Said regulations also provide that attorneys' fees incurred by beneficiaries incident to litigation as to their respective interest do not constitute a proper deduction. Thus, for an expenditure to be allowable as an "administration expense" such expenditure must have benefited the estate as a whole as contrasted with the personal benefit of a beneficiary or other person and must have been incurred in the normal and ordinary course of administration of the decedent's estate. 4 Mertens, Law of Federal Estate and Gift Taxation (1959), Sec. 26.28, pp. 97, 100.

As above pointed out, there was never any administration of the Estate of J. E. Sexton. The plaintiffs, for tactical reasons, chose not to offer for probate the 1948 will of J. E. Sexton under which, if admitted to probate, Mrs. Pitner could have qualified as independent executrix. Instead they decided to and did bring the action in Rusk County in trespass to try title and to enforce a contract under mutual wills. By that action the plaintiffs undertook to secure for themselves the entire Estate of J. E. Sexton.

That undertaking met with substantial success in that the plaintiffs, as a result of that action, became vested with title to all the property owned by J. E. Sexton at the time of his death, with the exception of real property and improvements situated thereon located in Johnson, Hill and Somervell Counties. The plaintiffs acquired title to the Johnson, Hill and Somervell Counties properties as the sole heirs-at-law of J. E. Sexton following the subsequent successful contest of the probate of the purported 1954 will of J. E. Sexton in the District Court of Johnson County, which contest was originally instituted by Mrs. Silvey, the mother of the plaintiffs and the sole surviving heir-at-law of J. E. Sexton at that time, and was later prosecuted to conclusion, upon the death of Mrs. Silvey, by the plaintiffs in their capacities as Trustees and Executrices of the Estate of their mother, Mrs. Silvey.

The expenses claimed to be deductible were not incurred in any attempt to obtain property for the Estate of J. E. Sexton, Deceased, or in the administration of said estate. All of the property involved, without question, belonged to the Estate of J. E. Sexton irrespective of whether the plaintiffs or Agnes Kirk, et al., were to eventually obtain same.

It would serve no useful purpose to extend the discussion further. The Court finds and concludes that the expenses incurred by the plaintiffs for attorneys' fees, court costs and related expenses claimed herein to be deductible expenses were individual and personal expenses of the plaintiffs incurred by them for their individual benefit and were not administration expenses. Therefore, they are not allowable as a deduction under Sec. 2053(a) (2) of the Internal Revenue Code of 1954.

The Clerk will forthwith enter judgment to the effect that the plaintiffs take nothing, that the action be dismissed on the merits and that the defendant recover of the plaintiffs, jointly and severally, its costs of action.

This Opinion will constitute the Findings of Fact and Conclusions of Law in this cause.