Moselle Silvey **PITNER** et al.,
Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 23364.

United States Court of Appeals
Fifth Circuit.

Dec. 18, 1967.

John M. Smith, Longview, Tex.. for appellants.

Richard M. Roberts, Act. Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Robert Waxman, Attys., Dept. of Justice, Washington, D. C., W. Wayne Justice, U. S. Atty., Tyler, Tex., for appellee.

Before WISDOM, COLEMAN and GODBOLD, Circuit Judges.

1. The wills are set forth in full in the opinion of the Texas Court of Civil Appeals in Kirk v. Beard, 1960, 334 S.W. 2d 531, 532–535.

WISDOM, Circuit Judge:

The plaintiffs, describing themselves as "custodians, next of kin and beneficiaries of the estate of J. E. Sexton, deceased", sue the United States to recover $75,848.19 in estate taxes. Sexton's will was not probated and there was no formal administration of the estate. The plaintiffs had established their rights to Sexton's estate through litigation based on Sexton's oral agreement with his brother to make mutual wills in favor of the plaintiffs. The plaintiffs contend that the effect of the litigation was to probate the will in the district court; that under Texas law there would be no formal administration of Sexton's estate, because there were no debts; that therefore attorneys' fees and other related expenses of the litigation are deductible as "administration expenses" under Section 2053(a) of the Internal Revenue Code of 1954. At first blush, the notion that administration expenses may be deductible when there is no administration seems too paradoxical for serious consideration. On reflection and after considering Texas law, and somewhat to our surprise, we find ourselves in agreement with the plaintiffs' theory of recovery.

\* \* \*

November 23, 1948, J. E. Sexton and his brother, W. H. Sexton, neither of whom had ever married, executed virtually identical mutual wills.[1] These wills resulted from an oral agreement between the brothers that the survivor would leave to the other his undivided interest in certain jointly held property in Hill, Johnson and Somervell Counties and would leave the residue to their nieces, the daughters of Mary Sexton Silvey.[2] W. H. died October 30, 1952.

His will was probated, J. E. and Mrs. Pitner qualified as independent executors, and his estate was distributed according to the terms of the will. March 1, 1958, J. E. died while living in a rest home in Cherokee County, Texas; previously he had resided in Johnson County, Texas.

March 3, 1958, two days after J. E.'s death, Agnes Kirk, I. W. Kirk, and Gean Turner offered for probate in the County Court of Johnson County a document purporting to be J. E.'s last will. The document was dated March 23, 1954. Except for a few hundred dollars, the will left the entire estate to Agnes Kirk.

Each of the beneficiaries employed her own attorneys and each worked out separately the fees arrangements. Mrs. Murphy and Mrs. Beard each agreed to pay a fixed fee of $25,000 plus expenses, regardless of the outcome of the litigation. Mrs. Jacobs agreed to pay her attorney one-third of whatever he recovered for her, less $25,000 paid in advance. Mrs. Pitner agreed to pay her attorneys $31,500 regardless of the outcome.

The attorneys decided not to offer the 1948 will for probate. Instead, Mrs. Silvey, sister and sole-surviving heir of J. E., would contest the application for probate of the purported will filed by the Kirks in Johnson County. The nieces would sue in the district court in Rusk County in trespass to try title to the property of J. E. in that county, basing their suit on the contract between W. H. and J. E. to make mutual wills.

The plaintiffs were successful in both cases. In the Johnson County case the court denied the application of the Kirks to probate the will they offered; the court stayed further proceedings, pending the outcome of the Rusk County suit. As a result of this suit, the nieces acquired title to the Johnson, Hill, and Somervell properties as the intestate heirs of J. E. Sexton, their mother having died since the action was commenced.[3] In the Rusk County suit the jury rendered a verdict in favor of the

plaintiffs and the court entered judgment vesting in the nieces title to all property owned by J. E. at the time of his death. The Texas Court of Civil Appeals affirmed. Kirk v. Beard, 1960, 334 S.W.2d 531. The Texas Supreme Court modified and affirmed as modified the judgment of the trial court. Kirk v. Beard, 1961, 162 Tex. 144, 345 S.W.2d 267. The Texas Supreme Court defined the theory of the action as a suit on the oral contract between the two brothers:

> [The appellants] stand to recover here not on the will of their uncle, but on the oral contract made between their two uncles, as that contract has been incorporated in the will. The contract did not provide that the survivor would leave the land to the nieces. The will has not been probated and may have been revoked. The question, as to whether the devise would have passed into the residuary estate had the will of the surviving brother been probated and became effective, is not material, we think, to the determination of the provisions of the oral contract. 345 S.W.2d at 273.

The 1948 mutual will executed by J. E., which named Moselle Silvey Pitner and W. H. as independent executors, was never offered for probate. The estate tax return filed June 2, 1959, reported the total value of the estate at $1,468,981.32. The Commissioner of Internal Revenue assessed the tax at $304,471.47 and collected this sum by administrative levy on certain bank accounts in J. E. Sexton's name.

$31,288.98 went to court costs and related expenses. $66,271.39 was paid to an accountant, but this sum was not claimed as a deduction from the gross estate. The net sum the plaintiffs claimed as an authorized deduction under 26 U.S.C.A. § 2053(a) (2) was $218,426.77. The government stipulated that the $31,288.98 spent on court costs was a reasonable sum under the circum-

---

3. See footnote 2.

stances. No such stipulation was made regarding the attorneys' fees.

The District Director denied the claim for refund. The district court also rejected the claim: "There was never any formal legal administration of the Estate of J. E. Sexton. * * * The expenses claimed to be deductible were not incurred in any attempt to obtain property for the Estate * * * [but] were individual and personal expenses of the plaintiffs incurred by them for their individual benefit and were not administration expenses." Jacobs v. United States, E.D.Tex.1965, 248 F.Supp. 695.

## I.

Section 2053(a) of the 1954 Code permits the deduction "from the value of the gross estate such amounts * * * for administration expenses * * * as are allowable by the laws of the jurisdiction * * * under which the estate is being administered".[4] The Code does not define the term "administrative expenses", but the Regulations, 26 C.F.R. § 20.2053–3(a), provide:

> The amounts deductible from a decedent's gross estate as "administration expenses" * * * are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures are essential to the proper settlement of the estate,

but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. * * * Deductible attorneys' fees are those which an "executor or administrator * * * has * * * paid or an amount which at the time of filing [of the estate tax return] may reasonably be expected to be paid". 26 C.F.R. § 20.2053–3(c) (1).

Under the 1948 will the plaintiffs' mother, Mary Sexton Silvey, could have qualified as an "independent executrix", but she never acted in that capacity. Even when she contested the 1958 will in the Johnson County action, she was acting in her capacity as sole heir-in-law in the event of intestacy rather than in the capacity of a personal representative of the estate. In the Rusk County action, the plaintiffs proceeded in their individual capacities to enforce the oral contract upon which the 1948 wills were based rather than as official representatives under the will to enforce the will itself. Finally no expenses were ever paid out of the estate: $41,041.18 was paid from a joint bank account to which all the plaintiffs contributed, and the remaining $177,385.59 was paid out individually by the plaintiffs.

## II.

**A.** A formal probate proceeding is not a prerequisite to a deduction for federal estate tax purposes under § 2053 (a). Commissioner of Internal Revenue v. Bronson, 8 Cir. 1929, 32 F.2d 112; Lewis v. Bowers, S.D.N.Y.1937, 19 F. Supp. 745, 747; 4 Mertens, Law of Federal Gift and Estate Taxation § 26.-16, pp. 38–41 (1959). Even where there is a probate proceeding, administration expenses may be deducted, if reasonable,

---

4. SEC. 2053. Expenses, indebtedness, and taxes.

(a) General Rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

(1) for funeral expenses,

(2) for administration expenses,

(3) for claim against the estate, and

(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

although they have not yet been allowed by the court. Estate of Alice K. Larkin, 1949, 13 T.C. 173; Estate of Jacob Voelbel, 1927, 7 B.T.A. 276; Bourne v. United States, 1933, 2 F.Supp. 228, 231, 76 Ct.Cl. 680.

■ Section 2053(a) requires only that the deduction be "allowable" by the laws of the jurisdiction under which the estate is being administered. See Commercial Nat. Bank v. United States, 4 Cir. 1952, 196 F.2d 182, 30 A.L.R.2d 1103; Smyth v. Erickson, 9 Cir. 1955, 221 F.2d 1. The term "allowable" was used in the 1954 Code for the first time, replacing the phrase "as are allowed", which had been used in the Internal Revenue Code of 1939, § 812(b), and all earlier versions of this section. This change seems to imply that the policy of the Code is not to rely upon formal probated actions in determining permissible deductions. The Eighth Circuit has suggested the reason for this policy: Section 2053(a) is meant to apply anywhere in the world, *"even in countries where administration of estates is had otherwise than through courts, if any such countries exist."* (Emphasis added.) Commissioner of Internal Revenue v. Bronson, 8 Cir. 1929, 32 F.2d 112, 114. Succession laws of Texas present us with just such a situation. Although Texas law establishes a formal court proceeding for the proving of wills, see Tex

Prob.Code §§ 81–94, V.A.T.S., in some situations a will need not—indeed, may not—be administered through a formal court proceeding.

The administration of a decedent's estate under the eye of a probate judge is a means to protect creditors, widows, and minor children. When no such protection is necessary Texas courts tend to reject petitions for formal court-supervised administration on the ground that such a proceeding would be a waste of time and money.[5] "Texas has almost from its beginnings looked upon the administration ,of a decedent's estate as a proceeding to be undertaken or required only if absolutely necessary. Several methods for its avoidance or for its simplification have long been part of Texas' jurisprudence. All of the methods previously recognized in Texas for this purpose have been preserved and perpetuated in its new Probate Code [effective January 1, 1956], which has added still others to facilitate transfer to those entitled to receive the estate." Basye Streamlining Administration Under the New Texas Probate Code, 35 Texas L. Rev. 165–66 (1956).[6]

■ Under the new Texas Probate Code, applicable to the present case, formal judicial administration is permitted only if the court hearing the application finds that a necessity for such administration exists.[7] If no such necessity can

---

5. Solomon v. Skinner, 1891, 82 Tex. 345, 18 S.W. 698; Patterson v. Allen, 1878, 50 Tex. 23, 25–26; Sanders v. Hart, Tex. Civ.App.1943, 171 S.W.2d 531, writ ref'd w.o.m.; Angier v. Jones, 1902, 28 Tex. Civ.App. 402, 67 S.W. 449, no writ.

6. After listing the purposes of administration as including collecting the assets, paying debts and claims, and distributing the remaining property, Professor Basye continues:

 If an administration is not necessary to satisfy the purposes stated above, certainly the law should not demand it merely as an empty form. And if one or more of these functions can be accomplished by some means short of full or complete administration, sufficient to satisfy the persons to be affected, the law should not compel resort to its

process for all estates for the mere sake of symmetry. It is probably not too much to venture the statement that Texas has gone farther than any American common-law state in dispensing with the necessity of full administration in one way or another. 35 Texas L. Rev. at 170.

7. Tex.Prob.Code § 178: "When Letters Testamentary or of Administration Shall Be Granted"—

 (b) Letters of Administration. When a person shall die intestate, or where no executor is named in a will, or where the executor is dead or shall fail or neglect to accept and qualify * * * then administration of the estate of such intestate, or administration with the will annexed of the estate of such

be proved and the court refuses to issue letters of administration, one of the alternative methods of administration sanctioned by Texas law is that of an informal family settlement. This approach is made possible by section 37 of the Probate Code which provides that when a person dies leaving a will, and no letters of administration are issued, "all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law", subject to the payment of the decedent's debts. This provision leaves the beneficiaries of an estate free to arrange among themselves for the distribution of the estate and for the payment of expenses from that estate.[8] Patterson v. Allen, 1878, 50 Tex. 23; Hart v. Hart, Tex.Civ.App.1914, 170 S. W. 1071, writ ref'd.

In the case before us it is reasonable to assume that had the plaintiffs sought letters of administration, their petition would probably have been rejected on the ground of no necessity: No claims remained outstanding against the estate and no beneficiaries existed whose interests would have required the protective supervision of the courts.[9] The plaintiffs, moreover, had been in constant agreement throughout the estate's informal administration.

 No reason exists under Texas law to deny allowance of expenses incurred in informally administering the decedent's estate.[10] The Texas Probate Code expressly provides that letters of administration *may* be granted "to any devisee or legatee of the testator" or "to the next of kin of the deceased, the nearest in order of descent first, and so on". Tex.Prob.Code § 77(d) (e). The Inter-

---

testator, shall be granted, *should administration appear to be necessary. No administration of any estate shall be granted unless there exists a necessity therefor,* such necessity to be determined by the court hearing the application. Such necessity shall be deemed to exist if two or more debts exist against the estate, or if or when it is desired to have the county court partition the estate among the distributees, but mention of these two instances of necessity for administration shall not prevent the court from finding other instances of necessity upon proof before it. [Emphasis added.]

Even if there is a question concerning identity of a decedent's heirs, the Texas Probate Code provides for a procedure for the determination of heirship that can be used in the absence of administration. Tex.Prob.Code §§ 48–56.

8. "If the decedent leaves no debts or only such as the heirs are willing to pay, no one can really insist upon administration. If the heirs can gain possession of the decedent's property and divide it acceptably among themselves, formal administration would serve no purpose whatever. Every lawyer knows of instances in which heirs have been able to obtain possession or transfer of all property to themselves and divide it without the aid of a probate court." Basye, 35 Texas L.Rev. at 171.

9. As stated in Angier v. Jones, 1902, 28 Tex.Civ.App. 402, 67 S.W. 449, 451, no writ:

We are also of the opinion that the application [for administration] should have been refused because it fails to show any necessity for an administration. * * * If there are no creditors of the estate, and the heirs of the decedent are known * * * no necessity for an administration is shown. The heirs in such case can sue to recover the debts, if it be necessary to bring suit for that purpose, and can divide the proceeds of the estate among themselves without the assistance of a probate court; and the appointment of an administrator to represent them is entirely unnecessary.

Accord, Hart v. Hart, Tex.Civ.App.1914, 170 S.W. 1071, writ ref'd w. o. m.

10. Whether the parties ultimately agree that the costs are to be divided in a certain way among themselves or are to be paid directly from the estate before distribution are matters of indifference to the state once it is established that all parties involved are competent to protect their own interests. Likewise, whether those costs are actually paid from the fund comprising the estate prior to the closing of the estate, or are deducted in a theoretical sense, the estate having been already closed and distributed, is not controlling. Alterdorf v. United States, D.N.Dak.1963, 228 F.Supp. 969.

nal Revenue Code defines "executor", as used in connection with the estate tax imposed by the Code, as "the executor or administrator of the decedent, or if there is no executor or administrator appointed, * * * then any person in actual or constructive possession of any property of the decedent." Int.Rev.Code of 1954, § 2203. Here, admittedly by virtue of hindsight, it is clear that the plaintiffs were in a position to have been formally anointed as administrators of the J. E. Sexton estate if any necessity therefor existed, and they were in the position of "executor" under the Code. Thus the plaintiffs were the proper persons to authorize any expenses concerning administration of the estate. It is immaterial that the party authorizing the expenditure of attorneys' fees is also a beneficiary of the estate, so long as the attorneys' services are rendered "directly for the benefit of the estate". Ware v. Barfield, Tex.Civ.App.1932, 54 S.W.2d 1105, no writ.

B. In Estate of P. A. Chapman, 1927, 8 B.T.A. 1071, relied on by the Government, the decedent died intestate, leaving only community property. The estate was not administered under Texas statutes, but was settled through family administration. At the death of the decedent one of his children took charge of the estate pending distribution and retained counsel to advise him concerning proper distribution of the assets. The Tax Court held that attorneys' fees were not deductible, reasoning that since Texas courts would not allow an "administration", since it was not necessary, there could be no "expenses of administration". But this decision was rendered under the Revenue Act of 1921, § 403, which provided for deduction only of such administrative expenses "as are allowed by the laws of the jurisdiction

* * *." As we have already seen, this language no longer prevails, but has been supplanted by later language relaxing emphasis on formal administration as a prerequisite to the deduction of administration expenses. Moreover, cases decided since Chapman have allowed deductions without formal probate proceedings, the primary concern being whether these deductions would in any event have been allowable under state law. E. g., Commissioner of Internal Revenue v. Bronson, 8 Cir. 1929, 32 F.2d 112. Finally, the lack of formal state administration proceedings would, under Chapman, also preclude deduction of appraisers' fees—deductions which, as *administration expenses,* are expressly allowed in Treas.Regs. § 20.2053–3(d). We therefore accord no weight to the *Chapman* decision.[11]

We have found no Texas cases directly in point. Our discussion in the previous section suggests that, considering the nature of the problem and the lack of necessity for administration proceedings in Texas, we believe that Texas courts would actually allow deduction of such attorneys' fees as are under present consideration. Decisions from other jurisdictions, not directly resting on statutory provisions or judicial action in those jurisdictions, reinforce our belief. In each case the successful will contestant was allowed a deduction *from the estate* for attorneys' fees expended in the course of the will contest.

In Smith v. Haire, 1917, 138 Tenn. 225, 197 S.W. 678, the question presented to the court was "whether the attorneys for the successful contestants of a will are entitled to payment of their fees out of the estate as part of the expenses of administration." The court said:

Expenses of this kind are not debts of the decedent. They are expenses

---

11. The Tax Court in Estate of Will Wright, 1947, 8 T.C. 531, refused to allow deduction for attorneys' fees arising from a suit by specific insurance beneficiaries to recover double indemnity on the policies. The estate itself was under administration in the Texas probate court, and recovery on the policies inured only to the extent that each beneficiary had an interest in that particular policy: "The attorneys' fees were of no benefit or interest to the decedent's estate". Thus we consider this decision not controlling in the present case.

incurred in the administration of the estate. * * * The defendant as executrix propounded the fraudulent will by the terms of which she would have obtained the entire estate of the testator. If the contest had not been instituted, the real will of the testator would have been defeated, and his estate would have passed to one for whom it was not intended. The attorneys, seeking compensation out of the estate, succeeded in defeating the fraudulent will and in establishing the true will. * * * There can be no doubt but what the services of counsel in contesting the fraudulent will succeeded directly in establishing the true will. In this way their services enured to the benefit of the estate. * * * This is a just rule which can injure no one; and is corollary to the effect that an executor, acting in bad faith in propounding a fraudulent will, cannot resist the payment of counsel fees out of the estate incurred in contesting such a will, appears to us to be equally just. 197 S.W. at 678–679.

Accord, Carmack v. Fidelity-Bankers Trust Co., 1933, 180 Tenn. 571, 177 S. W.2d 351; In re Failing's Estate, 1924, 113 Or. 6, 228 P. 821, 231 P. 148. See also Craven v. Shoults, 8 Cir. 1938, 97 F.2d 299; Schmalstig v. Conner, S.D. Ohio 1942, 46 F.Supp. 531; Estate of Helen Dow Peck, 1963, 40 T.C. 238. The court in Carmack v. Fidelity-Bankers Trust Co. referred by analogy to the principle that "attorneys attacking and setting aside as fraudulent a preferential conveyance, at the instance of an injured claimant [i. e. "employed acting *for their* client"] are entitled to an allowance *from the fund involved* of reasonable counsel fees for the services thus render-

ed. 177 S.W.2d at 355 ·(emphasis added.)

In Commissioner of Internal Revenue v. Bronson, 8 Cir. 1929, 32 F.2d 112, the deceased had executed a trust deed and a will, both of which, for all practical purposes, covered the same property. The executors elected not to probate the will, and there was never any·probate proceeding had; hence there was no opportunity to have a court approve any attorneys' fees paid. The attorneys' fees were deducted from the adjusted gross estate and the Commissioner contended that they were not deductible. The Tax Court, viewing the Treasury regulation interpreting the section on deduction of administrative expenses, observed:

> We think that insofar as this regulation undertakes to restrict the allowance of an administration expense to those items which have been fixed and awarded by a decree of a proper court, it is a too narrow construction of the act and should not be followed. 7 B. T.A. 127.

The Eighth Circuit, quoting and approving the above language, further said that the items specified in the Code section "are not specifically named; the amounts are not specifically fixed, nor are they left to be determined by any named court * * *. All of these sections * * * show that the words 'administrative expenses' are used in a broad sense, and are not limited to such expenses as shall be allowed by a probate court or other court of like jurisdiction." 32 F.2d at 114.[12]

Cases arising in the New York courts have viewed attorneys' fees of successful contestants in a will contest situation as chargeable to the estate.[13] Thus, the

---

12. We recognize that in *Bronson* the expenses were incurred by individuals acting in fiduciary capacities as trustees of the testamentary trust, and not by beneficiaries of the estate. However, the general principles there announced regarding the meaning of the Code section providing for deductions are still relevant.

13. Some of the New York decisions refer to (as opposed to rely on) the Surrogate's Court Act, § 231-a, which provides that the Surrogate Court has the power to determine and fix compensation of an attorney for services rendered to "an estate or to its representative, or to a devisee, legatee, distributee or any person interested therein * * *." The

Appellate Division in In re Limberg's Estate, 1939, 257 App.Div. 827, 11 N.Y. S.2d 908, observed:

> As a result of the services of attorneys-appellants, a paper writing purporting to be the last will and testament of Charles A. Limberg, deceased, was denied probate. The estate is now being administered and is to be distributed in accordance with the statutes governing intestacy. All of those who would share in such distribution have been benefited by reason of the services of the attorneys-appellants. Thus these services conferred a benefit upon the estate, for an estate cannot be considered simply as a matter of property irrespective of and divorced from those who are entitled to share therein. If an allowance out of the general assets were denied, an anomalous situation would ensue. A contestant would then have to bear the expense for the attorneys' fees out of his own share despite the fact that his efforts resulted in equal benefit to all remaining distributees, who would thereupon profit by their inaction. 11 N.Y.S.2d at 908–909.

Similarly, in In re Hirsch's Estate, Surr. Ct.1935, 154 Misc. 736, 278 N.Y.S. 255, the question presented was whether attorneys' fees were to be charged "upon the estate as a whole" or upon merely the share of the party instituting the contest litigation. The court, viewing the effect of the attorneys' efforts as creating "the estate where otherwise none would have existed", held:

> Here the main portion of the services from which recompense is sought were performed in the action in the Supreme Court, which, professedly and actually, was instituted and prosecuted, and the results of which beneficially inured equally to every person interested in the estate of the decedent. It follows that the estate as a

whole received the benefit and should pay therefor. 278 N.Y.S. at 258.

Accord, Re Levine's Estate, 1951, 279 App.Div. 663, 107 N.Y.S.2d 939.

The reasoning in the above cases is no less applicable to the present case arising out of Texas, and no reason has been suggested to this Court why Texas courts would not follow it when the appropriate case should arise.

### III.

■ In the determination of deductibility under section 2053(a) (2), it is not enough that the deduction be allowable under state law. It is necessary as well that the deduction be for an "administration expense" within the meaning of that term as it is used in the statute, and that the amount sought to be deducted be reasonable under the circumstances. These are both questions of federal law and establish the outside limits for what may be considered allowable deductions under section 2053(a) (2). In most instances the interest of the federal government in protecting its revenues will coalesce with the interest of the state in protecting its citizens, and the state law may be relied upon as a guide to what deductions may reasonably be permitted for federal estate tax purposes. In some cases, however, the state law on its face or in its application may not be responsive to the interests traditionally protected by the state. In other cases, such as the one before us, the state might justifiably feel that it had no interests to protect, and consequently fail to create rules to govern the situation one way or the other. When for any of these reasons state law fails in adequately representing the interest of the federal government, a framework still exists grounded in federal law defining the limits to which an expense may go and still be considered deductible for federal estate tax purposes.

section further provides that these fees may be taxed to the estate generally or to funds belonging to a particular legatee, devisee, etc. We rely on these cases be-

cause their reasoning, in directing payment from the general estate where the alternative is equally available, is equally applicable to the present case.

Section 20.2053–3 of the Regulations defines "administration expenses":

§ 20.2053–3 Deduction for expenses of administering estate

(a) In general. The amounts deductible from a decedent's gross estate as "administration expenses" * * * are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include * * * (2) attorney's fees * * *.

The government contends that the expenses incurred by the plaintiffs were not essential to the settlement of the estate and were incurred for the benefit of the plaintiffs alone. The government bases this argument on the fact that the litigation brought no new assets to the estate but served only to establish the plaintiffs' rights to the assets already there. We agree that the plaintiffs were acting in their own self-interest but we reject the conclusion that the litigation they undertook was not at the same time essential to the proper settlement of the estate.

The Regulations refer to expenditures necessary to the "*settlement*" of the estate, not merely to its aggrandizement.

Such expenses would include, in the words of § 20.2053–3(a), those incurred "in the collection of assets, payment of debts, *and distribution of property to the persons entitled to it.*" (Emphasis added.) If the litigation in which the expenses were incurred facilitated the distribution of the property to the persons entitled to it then the expenses come within the statute.[14] The litigation need not have concerned increasing the size of the estate. Dulles v. Johnson, 2 Cir. 1959, 273 F.2d 362; Schmalstig v. Conner, S.D.Ohio 1942, 46 F.Supp. 531.

■ Section 20.2053–3(c) (3) of the Treasury Regulations provides that attorneys' fees incurred by beneficiaries incident to litigation as to their respective interests are not administration expenses, and therefore, are not deductible. We view this section as applying where beneficiaries are suing to determine their share in the estate as against other beneficiaries, not, as here, where parties have sued to have their interest in the estate in general—the total estate—recognized as opposed to others with no legitimate interest in the estate whatsoever.

■ By successfully opposing the Kirk will in the Johnson County action, the plaintiffs accomplished the distribution of the assets of the estate in accordance with the will J. E. Sexton had agreed to make. Had the plaintiffs been acting as the official representatives of the 1948 will they would have had no choice but to contest the will presented by the Kirk group. In that case the right of plaintiffs to have their litigation expenses deducted from the gross estate for tax purposes could not have been questioned.[15] Furthermore, it may

---

14. See cases cited and discussed in part B above. See also Basye, 35 Texas L.Rev. at 167:

> [T]o distribute property to the persons entitled thereto means not only physical distribution but also an ascertainment of those persons who are heirs, devisees or legatees and of the shares to which they are entitled.

> It cannot be doubted that the purpose— and effect—of the suits brought by the plaintiffs, for which attorneys' fees are being sought, was "ascertainment of those persons who are heirs".

15. E. g., Estate of Swayne v. Commissioner, 1964, 43 T.C. 190, 199–200, acq. 1965–33 Cum.Bull. 6; Dulles v. Johnson,

be said that by their successful prosecution of this suit the plaintiffs came into "constructive possession" of the property involved in the suit. In fact, under Tex. Prob.Code § 37 the plaintiffs' title vested at that time.[16] As parties in constructive possession of property of the decedent, they may even be considerd "executors" under Int.Rev.Code of 1954, § 2203. The use of this label, however, should not be necessary for the plaintiffs to establish attorneys' fees as deductible; nor should they be penalized solely because there existed no formal official capacity, under state law, in which they had to act. Section 2053(a) does not turn on such distinctions. Altendorf v. United States, D.N.Dak.1964, 228 F.Supp. 969.

The plaintiffs should be permitted to deduct the expenses of the Rusk County action as well. The action in that case was one to clear title, and was based on the contract underlying the will rather than on the will itself. The effect on the estate, however, was the same as if the plaintiffs had brought the 1948 will to probate. The plaintiffs' right to the property held by the estate was established once and for all by a court of competent jurisdiction. When such a transfer of a decedent's property is accomplished under Texas law, and the transfer is subject to a federal estate, it seems reasonable to infer that the expenses incurred in bringing about that transfer must be considered in determining the net estate for federal tax purposes. Haggart's Estate v. Commissioner of Internal Revenue, 3 Cir. 1950, 182 F.2d 514.

## IV.

The only question left to decide is whether the attorneys' fees incurred by the plaintiffs in the prosecution of this litigation are reasonable in light of the services rendered. The Government has already stipulated as to the reasonableness of the court costs. Since the litigation for which the fees were charged was quite complicated and might require the finding of additional facts before a decision as to reasonableness can be made, we remand this question to the court below.

We reverse and remand for further proceedings consistent with this opinion.

---

5 Cir. 1959, 273 F.2d 362. And see Tex. Prob.Code § 242, which provides that "personal representatives of estates shall also be entitled to all necessary and reasonable expenses incurred by them in the preservation, safe-keeping, and management of the estate * * * and all reasonable attorney's fees, necessarily incurred in connection with the proceedings and management of such estate * * *."

16. "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed shall vest immediately in his heirs at law * * *." Tex.Prob.Code § 37.