Harry J. Myerson, Petitioner-Appellant, v. L. J. Gumpert, Assignee, Evelyn C. Norton, Executor of the Estate of Glenn D. Norton, Deceased, Security First National Bank of Los Angeles, Guardian of Estate of Orabelle R. Norton, Herbert A. Erzinger, Carolyn Erzinger, G. W. Rodway, O. L. Risch, C. S. Cole, W. G. Voliva, and E. E. Berg, Respondents-Appellees.

Gen. No. 51,876.

First District, Fourth Division.

December 31, 1969.

 ██

Arthur Abraham, of Chicago, for appellant.

Paul C. Ross, John J. Yowell, William R. Yowell, of Chicago (Yowell and Cessna, of counsel), and Stiefel, Burns, Levinson, Komie & Kaplan, of Chicago (Charles W. Stiefel, Jr. and John C. Stiefel, of counsel), for appellees.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Harry J. Myerson (referred to throughout this opinion as "plaintiff"), appeals from an order denying his petition for a fee of $12,000 for services alleged to have been rendered in preserving assets of a corporation in receivership and liquidation.

In plaintiff's brief, he states that the fee is sought as compensation for upwards of 300 hours of time spent in the preparation of abstracts and briefs which were filed in this court in 1939 (Myerson v. Norton, 302 Ill App 176, 23 NE2d 926) ; that, as a result of these services, a decree of the Superior Court was affirmed, thus bringing into the corporate estate more than $118,000. Plaintiff's brief also assigns as a basis for allowance of the fee requested that he had been responsible for payment of $118,000 in insurance money into the receivership account, by virtue of his having filed the suit in which the receiver had been appointed.

Answers to plaintiff's petition were filed by various parties in interest, and the matter was decided on the pleadings, there being no substantial dispute as to facts.

The factual background of this case is set forth rather fully in this court's opinion referred to above, and we shall not repeat it here except in brief outline.

In 1931, the business of L. J. Bartlett, Inc., was failing and an agreement was reached with its shareholders to undertake liquidation, with plaintiff and three others as trustees who were to serve without compensation. They, in turn, agreed that plaintiff should handle the work involved, including legal services for which the trust agreement provided that plaintiff was to be paid. As liquidator, plaintiff collected about $41,000, and paid out some $37,000 to creditors and for expenses. Apparently the trustees were ready to make final distribution by 1935, but at that point they could not agree on disposition of an insurance policy owned by the corporation on the life of G. D. Norton, its secretary and treasurer. The policy, which had been taken out by the corporation, provided $250 per month for disability and carried a death benefit of $25,000, all payable to the corporation. At the time in question, Norton was 40 years old and was permanently disabled with paresis of the brain. Two of the trustees proposed sale of the policy to Norton for $1,000. Plaintiff and the other trustee, Jacob E. Replogle, thought they should continue to hold the policy. Plaintiff and Replogle therefore filed suit (through attorney William B. Rogan), for resolution of this impasse, for approval of plaintiff's account as trustee and liquidator covering the period from 1931 to 1935, and for approval of fees to plaintiff in the amount of $5,500.

The court appointed a receiver for the corporation in July, 1935. Plaintiff was not appointed as attorney for the receiver, and we are unable to perceive that he thereafter retained any interest in the litigation except as to approval of his accounting and fees. The report of the Master in Chancery recommended that the account and fees be approved and that the insurance policy be sold by the receiver. Plaintiff objected to the Master's recom-

354

mendation concerning the policy, not as to its sale, but only because it did not provide that creditors could bid for the policy and apply their claims against the purchase. Objection to the sale was made, however, by one of the defendants, G. R. Rodway, who was a stockholder and the accountant for the corporation. Rodway appears to have taken part in the litigation through his attorneys, despite having been defaulted.

After hearing before the chancellor, a decree was entered on December 19, 1968. It approved plaintiff's account and directed the receiver to pay a balance of $1,500 to plaintiff "for his services rendered in the liquidation." The sum of $4,000 had previously been paid, thus totalling the $5,500 requested. The decree also approved an attorney's fee of $1,500 to Rogan for representing plaintiff and Replogle throughout the litigation. Finally, the decree provided that the court reserved jurisdiction over the insurance policy in question which was not to be disposed of without further order of court.

Norton (the insured under the policy), appealed, claiming that plaintiff's fee allowance was excessive because, under the trust agreement, it should have been for legal services only and not for services as liquidator. Plaintiff and Replogle, again through their attorney, Rogan, filed a brief in support of the fees allowed, and this court affirmed. Myerson v. Norton, supra. In his appeal, Norton also sought to set aside the part of the decree which directed the receiver to retain the insurance policy. Rogan's brief on behalf of plaintiff and Replogle responded on this point simply by calling attention to the fact that this order was interlocutory and therefore not appealable. This court agreed and devoted one paragraph of its opinion to disposing of the point on that ground. Rodway had also appealed to set aside his default. The two appeals were combined and the court held against Rodway because of insufficient information in the record.

Thereafter, the receiver continued to receive a monthly check for $250 from the insurance company. These payments had totalled $93,000 when the insured (Norton) died in 1966. The principal amount of $25,000 was then paid, resulting in overall receipts of $118,000 from the policy. Soon after Norton's death, plaintiff filed his petition for $12,000 in fees, on the basis of his having been responsible for recovery of this $118,000. Hearings on the petition were conducted by the same chancellor who had heard the original proceedings almost 30 years earlier. Plaintiff's petition was denied and this appeal followed.

The entire argument in plaintiff's brief is based upon the proposition that a litigant who has maintained a successful suit for preservation or increase of a common fund, is entitled to a reasonable allowance for attorney's fees. All the cases which he cites relate to the allowance of fees to the attorney in such litigation: State Life Ins. Co. v. Board of Education of Chicago, 401 Ill 252, 258, 81 NE2d 877; People ex rel. Barrett v. Fond du Lac State Bank, 309 Ill App 139, 143, 33 NE2d 144; First Nat. Bank of Chicago v. La Salle-Wacker Bldg. Corp., 280 Ill App 188, 197; Milliman v. Seed, 206 Ill App 362; Fischer v. Dickinson Industrial Site, Inc., 15 Ill App2d 464, 468, 146 NE2d 698; Trustees v. Greenough, 105 US 527, 532; Sprague v. Ticonic Bank, 307 US 161, 167; In re Hirsch's Estate, 154 Misc 736, 278 NYS 255, 257; Central Standard Life Ins. Co. v. Gardner, 36 Ill App2d 292, 183 NE2d 881; Mueller v. Sloan, 33 Ill App2d 205, 178 NE2d 135; Orme v. Northern Trust Co., 29 Ill App2d 75, 172 NE2d 413.

Throughout the original litigation in the Appellate Court as well as in the Superior Court, plaintiff and Replogle were represented by counsel, and plaintiff was not an attorney of record in either court. Plaintiff makes no claim to have assisted his attorney in the Superior

Court, but expressly states that "he is asking for compensation for assisting in the preparation of abstracts and briefs" in the Appellate Court. The attorney for plaintiff and Replogle (Rogan), filed 46 pages of briefs on that appeal, two of which suggested that the order retaining jurisdiction over the insurance policy was not appealable, and the rest of the briefs argued in support of the allowance to plaintiff of the $5,500 fee and approval of plaintiff's account by the trial court. The additional abstract which was filed by Rogan consisted of six pages dealing with the fee question. As we have noted, this court did not consider the question of the insurance policy, yet plaintiff now contends that it was his services in assisting his attorney in preparation of briefs and abstracts "which resulted in a decision of the Appellate Court which sustained the Decree of the Superior Court and as a result of which there was brought in to this estate the sum of upwards of $118,000."

From the outline we have set forth above as to the facts of this litigation, we conclude that plaintiff's position is both factually and logically a nonsequitur. Plaintiff's claim cannot be considered as relating simply to his having been a plaintiff in the original action, since Replogle was also a plaintiff and Myerson does not seek a fee on his behalf. Neither does he cite any authority to support a fee to either himself or Replogle as litigants. Nor is it true, as plaintiff argues, that he was required to wait almost thirty years to present his claim after Norton's death. The insurance payments were reaching the receiver all through the years, and, in fact, plaintiff did, on February 7, 1940, ask for and receive from the Superior Court the sum of $74.90 as reimbursement for Appellate Court costs advanced. His request for this reimbursement made no mention of the fact that he had also performed services for which he expected to be compensated.

Additionally, on presentation of the receiver's report, the trial court, on due notice, had entered an order on January 17, 1940, finding that "all of the expenses of liquidation and all debts of L. J. Bartlett, Inc., have been paid; that the only persons entitled to share in the assets of L. J. Bartlett, Inc., are the owners of shares of stock of said corporation." In the same order, the court then ordered certain distributions of the funds on hand in the receiver's account. The record does not indicate any objection on the part of plaintiff.

The order of the Circuit Court denying plaintiff's petition for fees is affirmed.

Affirmed.

DRUCKER, P. J. and STAMOS, J., concur.