ESTATE OF MABEL F. COLTON PARK, DECEASED, THE DETROIT BANK AND TRUST COMPANY, ADMINISTRATOR WITH WILL ANNEXED, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2621–70.  Filed February 28, 1972.

*James E. Beall*, for the petitioners.
*James C. Lynch*, for the respondent.

STERRETT, *Judge:* The respondent determined a deficiency in the estate tax of the Estate of Mabel F. Colton Park in the amount of $1,505.59. Due to concessions the issues remaining for adjudication are:

(1) Whether the expenses incurred in connection with the sale of real estate were necessary to the administration of the estate so as to be deductible under section 2053(a), I.R.C. 1954,[1] or, in the alternative, can such expenses be used to reduce the fair market value of the property for estate tax purposes.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

(2) Whether the expenses in connection with the maintenance and preservation of the real estate prior to sale are deductible as administrative expenses.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner Detroit Bank & Trust Co. is the duly appointed administrator with will annexed of the Estate of Mabel F. Colton Park, who died testate March 1, 1968, a resident of Grosse Pointe Farms, Wayne County, Mich. The decedent named two of her four sons, John E. Park and A. Colton Park, to act as coexecutors with power to sell any and all of her property. Decedent's will was duly admitted to probate by the Probate Court of Wayne County, Mich., on March 8, 1968. The executors requested the appointment of petitioner as administrator. Petitioner was so appointed on March 14, 1968. Petitioner filed the Federal estate tax return here involved with the district director of internal revenue at Detroit, Mich., on May 29, 1969, and tax in the amount of $15,257.31 was paid with said return.

On the date of her death, decedent owned a two-story single-family residence (hereinafter referred to as residence) located in Grosse Pointe Farms, Mich., and a one-story frame cottage (hereinafter referred to as cottage) located in Sanilac County, Mich. Both the residence and cottage were included as part of the probate assets and formed part of the residue of the estate, left to decedent's four sons under the terms of the will.

The total probate estate was $123,234.51 on the date of decedent's death. It consisted of the following:

| | |
|---|---:|
| Residence | $52,000.00 |
| Cottage | 24,750.00 |
| U.S. savings bonds, series E | 24,069.62 |
| 350 shares Continental Associates, Inc. common stock | 350.00 |
| Cash in bank account | 1,807.45 |
| Social Security benefit | 97.90 |
| Income on hand and accrued due deceased's estate from trust accounts | 6,625.55 |
| Household furniture at 253 Lewiston Road | 5,841.25 |
| Household furniture and personal effects at 2315 Lake Shore Road | 250.00 |
| Jewelry | 2,090.75 |
| Refund of overpayment of 1967 Federal income tax | 347.61 |
| Proceeds from Connecticut General annuity policy | 5,004.38 |
| Total | $123,234.51 |

Prior to the decedent's death, her four sons had determined that none of them would be interested in retaining the real estate. There-

fore, upon the death of decedent the sons requested petitioner to sell the property. In this regard the cottage was offered for sale on or about May 21, 1968, and the residence on or about June 1, 1968.

On August 1, 1968, the cottage was sold for $25,000; $10,000 as a downpayment, the remainder payable in monthly installments of $150. In connection with the sale petitioner incurred expenses of $1,935 which were deducted on the Federal estate tax return. On September 16, 1968, petitioner made a distribution of $14,000 to the four heirs.

The sale of the residence was consummated on March 24, 1969, for $53,000. Fifty thousand dollars was paid in cash and the balance was paid by a note given directly to the four heirs. Petitioner incurred expenses of $2,350.30 in connection with the sale of the property, which were deducted on the Federal estate tax return. On April 7, 1969, petitioner distributed $40,000 to the four heirs.

As of decedent's date of death the following constituted claims against the assets of her probate estate:

| | |
|---|---|
| Funeral expenses | $2,256.75 |
| Various debts contracted by decedent | 2,230.33 |
| Federal estate tax liability as disclosed on Form 706 | 15,257.31 |
| Michigan inheritance tax | 1,425.00 |

The probate accounting, filed by petitioner for the years ended March 1, 1969, and March 1, 1970, listed deductions from principal at a total figure of $30,753.82, consisting of the following:

| | |
|---|---|
| Administrative expenses | $9,235.29 |
| Claims | 2,472.24 |
| Taxes | 17,910.60 |
| Miscellaneous | 1,135.69 |
| Total | 30,753.82 |

This figure included costs of selling the residence and cottage properties as well as the claims noted above.

From the date of decedent's death until sale of the residence, petitioner expended from the estate $2,068.20 for real estate taxes and for maintenance of the residence. For maintenance of the cottage a total sum of $169.68 was expended out of estate assets. These expenses were also included within probate accounting noted above.

Respondent in the notice of deficiency disallowed the deduction of the expenses incurred in the sale of the property.

Petitioner in its petition requests a determination that an overpayment be found to exist, asserting that the expenses incurred in maintaining the property prior to sale are deductible and were not deducted as administrative expenses.

OPINION

The first issue relates to whether the expenses incurred in the sale of real estate are deductible as an administration expense under section 2053 (a)[2] or, in the alternative, can such expense reduce the fair market value of the property for estate tax purposes.

The facts which give rise to this controversy are set forth in our findings and may be briefly summarized. Mable F. Colton Park died March 1, 1968. On the date of her death she owned a residence and a cottage. The will admitted to probate left both parcels of real estate to the decedent's four sons as part of the residue estate. The sons determined that none of them would be interested in retaining the real estate and therefore requested petitioner, Detroit Bank & Trust Co., administrator, to sell the property. On August 1, 1968, the cottage was sold, and on March 24, 1969, the residence was sold. In connection with the sales petitioner incurred expenses totaling $4,285.30, which were deducted on the Federal estate tax return.

Respondent contends that the expenses incurred in the sale are not deductible as they were not necessary for the proper administration of the estate, but rather were incurred for the individual benefit of the heirs. In support of this assertion respondent points to the language of the regulations, which states in part:

The amounts deductible from a decedent's gross estate as "administration expenses" * * * are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. * * * Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. [Sec. 20.2053–3(a).]

This Court has indicated its acceptance of respondent's regulations. *Estate of James S. Todd, Jr.,* 57 T.C. 288 (1971); *Estate of Edward N. Opal,* 54 T.C. 154 (1970), affd. 450 F. 2d 1085 (C.A. 2, 1971); *Estate of Christine Swayne,* 43 T.C. 190 (1964); *Estate of William A. Landers, Sr.,* 38 T.C. 828 (1962). Therefore, if expenses are incurred

---

[2] SEC. 2053.  EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

(1) for funeral expenses,
(2) for administration expenses,
(3) for claims against the estate, and
(4) for unpaid mortgages on, any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

to personally benefit the heirs rather than to aid in the proper administration of the estate, the expense deduction will be disallowed.[3] *Estate of David Smith*, 57 T.C. 650 (1972).

However, we hasten to point out that a given expense associated with the administration of an estate may be incurred for several reasons. That is, the sale may have been initiated for the benefit of the heirs, but at the same time it may have been necessary to acquire cash to pay expenses, preserve the estate, or to effect a distribution. In such a situation it may be more appropriate to ignore the personal aspects of the transaction and allow the executor to deduct the incurred expenses.

It is on this theory that petitioner contends the selling expenses are deductible. Relying on regulations section 20.2053-3(d)(2) which states in part:

> Expenses for selling property of the estate are deductible if the sale is necessary in order to pay the decedent's debts, expenses of administration, or taxes, to preserve the estate, or to effect distribution. The phrase "expenses for selling property" includes brokerage fees and other expenses attending the sale, such as the fees of an auctioneer if it is reasonably necessary to employ one.

petitioner contends that the debts, expenses, and taxes exceeded the available cash and therefore necessitated the sale of the real estate. Secondly it asserts that the estate was being reduced by the cost of maintaining the property and therefore the property was sold to preserve the estate. Finally petitioner argues the sale was necessary to effect a distribution since it was impractical to distribute two pieces of property to four heirs scattered all over the State.

We hold for respondent; petitioner has failed to demonstrate any reason for the sale other than the personal benefit of the heirs. The facts indicate that the heirs having determined not to retain the property requested petitioner to sell it. Complying with the request, petitioner sold the property and distributed the major portion of the proceeds to the heirs, clearly indicating that the sale was initiated solely to benefit the heirs. Further, the accounting filed by petitioner in the Probate Court indicates that the $24,069.62 of U.S. savings bonds were redeemed between March 2, 1968, and March 1, 1969. Therefore, it is evident that with the $13,882.89 in cash held at the

---

[3] The Tax Court is not bound by a State probate court determination of what is an allowable administration expense. *Estate of Christine Swayne*, 43 T.C. 190 (1964). Nor is it sufficient that the deduction is allowable under State law, the requirements of the regulations must still be complied with. *Estate of David Smith*, 57 T.C. 650 (1972); *Hipp v. United States*, —— F. Supp. —— (D.S.C. 1971).

Though not cited by petitioner, this Court feels obligated to point out that we do not read *Union Commerce Bank v. Commissioner*, 339 F. 2d 163 (C.A. 6, 1964), to hold that the deductibility of administration expenses is determined solely by local probate law. Further we point out that *Union Commerce Bank* is factually distinguishable as it dealt with the deductibility of interest payments accruing after death on a preexisting gift tax liability and not with the deductibility of selling expenses voluntarily incurred in the sale of estate assets.

date of death petitioner had more than enough cash[4] to pay the estate's debts, expenses, and taxes,[5] albeit by reason of the petitioner causing the bonds to be redeemed. In addition, we note that the total expense incurred in maintaining the property was almost half of the cost incurred in selling it. Thus if maintaining the estate was the only goal the property should have been distributed in kind, thereby eliminating the necessity to pay the substantial costs of sale. Lastly, we hold that an expense deduction for selling property to "effect a distribution" does not contemplate a situation wherein the property is sold because the distribution is determined to be inconvenient.

Petitioner's reliance on *Dauphin Deposit Trust Co.* v. *McGinnes*, 208 F. Supp. 228 (M.D. Pa. 1962) (affirmed on appeal but this issue not passed on), is misplaced. The facts in *Dauphin* indicate that the sale of the property was necessary to comply with the provisions of the decedent's will; funding of trusts, divisions of property, etc. The present case contains no such facts, but rather clearly indicates that the sale was initiated solely by the heirs to benefit themselves. Further, we note that in *Dauphin*, the court pointed out that under Pennsylvania law, the controlling jurisdiction, there is a conclusive presumption that a general power of sale is for the payment of debts. We can find no such presumption under Michigan law.

Upon an examination of the entire record we conclude that the property was sold solely to benefit the heirs and therefore the expenses incurred in the sale are not deductible.

Alternatively we note that the expenses of sale do not reduce the fair market value of the property. See *Publicker* v. *Commissioner*, 206 F. 2d 250 (C.A. 3, 1953); sec. 20.2031–1(b), Estate Tax Regs.; cf. *Caroline W. Edwards*, 31 B.T.A. 879 (1934).

The second issue relates to the deductibility of expenses incurred by petitioner in maintaining the property prior to sale.

Petitioner asserts that these expenses are deductible and were in fact not deducted, thereby requiring a determination that an overpayment exists. Respondent contends that these expenses, like the other administrative expenses, were deducted on the fiduciary income tax return.[6]

---

[4] Respondent in his brief contends that the deceased, at her date of death, had enough cash and cash-like assets to cover expenses. This implies that respondent is creating a "property priority"; i.e., which property must be sold first to pay the obligations of the estate. We cannot agree with this implication. An executor should be permitted to sell what he wishes to cover expenses. He is subject to the control of the Probate Court and is therefore responsible for his actions.

[5] Though petitioner applied the major portion of the proceeds attributable to the bonds to the acquisition of short-term notes, it is clear that this was done merely to produce additional income during the administration of the estate. Petitioner admits that the notes were later sold to pay the estate's expenses.

[6] Petitioner filed an election under sec. 642(g) to deduct the expenses on the fiduciary income tax return.

Petitioner has failed to even mention let alone support its position in its brief. We therefore hold that petitioner has failed to satisfy its burden of proof and we find for respondent.

*Decision will be entered under Rule 50.*