ESTATE OF VERA T. POSEN, DECEASED, GLORIA POSEN, ADMINISTRATRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9490–78.    Filed December 10, 1980.

*Alan Prigal,* for the petitioner.
*Paulette Segal,* for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $3,222 in petitioner's Federal estate taxes. Concessions having been made by petitioner, the sole issue for decision is whether expenses incurred in the sale of a cooperative apartment are deductible as administration expenses under section 2053(a)(2).[1]

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

Petitioner is the Estate of Vera T. Posen (hereinafter the decedent), who died intestate on January 25, 1975. The estate tax return was timely filed with the Internal Revenue Service, New York, N.Y. Gloria Posen (hereinafter Posen), daughter of the decedent, is the only heir at law and is administratrix of the estate. Posen resided in New York, N.Y., at the time the petition herein was filed.

At her death, decedent owned and resided in a cooperative apartment. The monthly maintenance fee was $672.60.

If the apartment had been distributed to Posen as heir at law, she would have sold it. Posen did not want to live in it because the building was unsuited to her lifestyle and she did not feel she could afford the maintenance; moreover, she knew nothing about holding real estate as an investment.

On or about July 24, 1975, Posen, acting as administratrix of the decedent's estate, sold the shares of stock and assigned her proprietary lease in respect of the apartment for $56,000.

In addition to the $56,000, the decedent's estate consisted of the following assets:

| Asset | Date of death value |
|---|---|
| Bank accounts | $163,888 |
| Stocks and bonds | 759 |
| Miscellaneous property | 5,852 |

The total amount in bank accounts was held at the date of death as follows:

| Amount | Type of account |
|---|---|
| $17,305 | Day-of-deposit-to-day-of-withdrawal |
| 786 | Checking account |
| 16,022 | Time deposit, at 6½-percent interest, maturing Aug. 2, 1975 |
| 20,020 | Time deposit, at 6½-percent interest, maturing Nov. 12, 1975[2] |

[2]While the exact rate of interest on this account does not appear in the stipulation because of a typographical error, both parties, in their briefs, accept 6½ percent as the interest rate.

$109,755   Other  time  deposits,  maturing  after  Dec.  31, 1975[3]

The  time  deposits  maturing  after  the  calendar  year  1975 included one account of $10,000 opened on January 24, 1975, for a 2½-year term at an interest rate of 6¾ percent.

Interest could be withdrawn from all the deposit accounts without penalty at any time after posting. Posting occurred every 3 months. At least $4,725 of interest was posted by June 30, 1975, and at least another $2,500 was posted by September 30, 1975. The penalty for early withdrawal of the principal for each of the time accounts maturing in 1975 was the forfeiture of 3 months' interest and payment of a reduced rate of interest of 5½ percent upon the account.[4]

As of the date of death, the deceased had no debts. Petitioner made disbursements totaling $18,645, exclusive of Federal estate tax payments and expenses incurred in connection with sale of stock in the cooperative corporation, as follows:

| Item | Amount | Date paid |
|------|--------|-----------|
| N.Y. estate tax | $5,500 | July 24, 1975 |
| N.Y. estate tax | 1,000 | Oct. 17, 1975 |
| Attorney's fees | 2,000 | Apr. 9, 1975 |
| Attorney's fees | 2,000 | Apr. 15, 1975 |

[3]The estate tax return and the stipulation as to these accounts are somewhat inconsistent, and our findings of fact in this regard are an attempt to reconcile such inconsistencies. The stipulation states that the estate had a total of $17,305 in day-of-deposit-to-day-of-withdrawal accounts, "approximately $800" in a checking account, a time deposit of $16,022, and one of $20,020 maturing in 1975, and other time deposits totaling $127,846, maturing in 1976 and later years. The sum of these amounts is $181,993, while the total amount in bank accounts reported on the return and accepted by the parties on brief, is only $163,888. Since the accounts specifically mentioned in the stipulation are listed in the return (one of $786 corresponds to the checking account of "approximately $800," and two accounts, one of $8,714 and one of $8,591, correspond to the total of $17,305 in day-of-deposit-to-day-of-withdrawal accounts), we have regarded the stipulated figure of $127,846 for "other time deposits" as erroneous. In any case, the exact amount of time deposits maturing in 1976 and thereafter does not affect our decision herein.

[4]The stipulation does not make clear whether the penalty would be 3 months' interest on the amount withdrawn only, if less than the entire amount, and whether the reduced rate of interest applied from the date of withdrawal or from the beginning of the period for which interest had not been posted.

Attorney's fees .......................... $3,000    July 24, 1975
Apartment maintenance
(including utilities) .................... 4,145           1975
Funeral expenses ...................... 1,000           1975

The estate also made a payment of $30,800 for Federal estate taxes on October 23, 1975, to obtain an extension of the time for filing a completed estate tax return which would otherwise have been due on October 27, 1975.

On the estate tax return, Schedule J (Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims), petitioner claimed a deduction of $11,692 for "expenses incurred for maintaining and selling cooperative apartment" as follows:

| Item | Amount | |
|---|---|---|
| Consolidated Edison | $109 | |
| Maintenance | 4,036 | |
| Subtotal | | $4,145 |
| Telephone | 101 | |
| Answering service | 186 | |
| Newspaper advertisement | 164 | |
| Repairs | 3,394 | |
| Brokerage fees | 3,360 | |
| Tax stamps | 342 | |
| Subtotal | | 7,547 |
| Total | | 11,692 |

Respondent allowed the deduction for maintenance and Consolidated Edison but disallowed the remaining deductions of $7,547. These deductions were for expenses incurred in the sale of the cooperative apartment, which were actually paid for the purposes specified above and were reasonable in amount. The propriety of such expenditures was not specifically ruled upon by any New York State court.

OPINION

The sole issue for decision is whether expenses incurred by petitioner in the sale of a cooperative apartment[5] are deductible as administration expenses under section 2053(a)(2). That section provides for a deduction from the value of the gross estate of "such amounts * * * for administration expenses * * * as are allowable by the laws of the jurisdiction * * * under which the estate is being administered." Section 20.2053–3(a), Estate Tax Regs., states that amounts deductible as "administration expenses" are limited to expenses "actually and necessarily incurred in the administration of the decedent's estate." In regard to selling expenses, subsection (d)(2) of section 20.2053–3, Estate Tax Regs., provides in part: "Expenses for selling property of the estate are deductible if the sale is necessary in order to pay the decedent's debts, expenses of administration, or taxes, to preserve the estate, or to effect distribution."

Petitioner contends, and respondent disputes, that the expenses of the sale of the apartment by the estate were allowable under the laws of New York State, the jurisdiction in which the estate was administered, and that the sale was necessary for one of the purposes enumerated in section 20.2053–3(d)(2), Estate Tax Regs., or, in the alternative, that the requirements of the regulation are invalid.

The issue of whether the expenses of selling the cooperative apartment were allowable under New York State law was not raised in any New York State court and, in any case, a Federal court would not be precluded from reexamining a lower State court's allowance of administration expenses. *Estate of Smith v. Commissioner*, 510 F.2d 479, 482–483 (2d Cir. 1975), affg. 57 T.C. 650 (1972).

In *Estate of Smith*, the Second Circuit ruled that, because the sale of personal property involved therein was not necessary to the settlement of the estate, the selling expenses were neither allowable under New York State law nor deductible under the applicable regulations.[6] Our review of New York State law

---

[5]Although, technically, it was the stock in the corporation that was sold, for convenience, we refer sometimes herein to the sale of the cooperative apartment.

[6]The apartment, held by virtue of ownership of stock in a cooperative corporation, is also personal property. *In re Miller's Estate*, 205 Misc. 770, 130 N.Y.S.2d 295 (N.Y. County Surr. Ct. 1954). See also *Stockton v. Lucas*, 482 F.2d 979 (Temp. Emer. Ct. App. 1973).

convinces us, however, that, since the decision in *Estate of Smith*, changes in the relevant New York statutory provisions have eliminated the requirement that a sale by an estate be necessary for the expenses thereof to be allowable, so long as the sale is advantageous to the beneficiaries of the estate.

In reaching its conclusion in *Estate of Smith*, the Second Circuit relied on section 222 of the New York Surrogate's Court Act[7] (13B Gilbert-Bliss Civil Practice of New York (1953)). That section was succeeded on September 1, 1967, by section 11–1.1(b)(23) of the New York Estates, Powers & Trusts Law (McKinney 1967), which was renumbered as section 11–1.1(b)(22) on June 22, 1973 (McKinney Supp. 1979).[8] Whereas section 222, N.Y. Surrogate's Court Act, authorized a fiduciary to pay "his legal and proper expenses of adminstration necessarily incurred by him," subparagraph (b)(22) of sec. 11–1.1, N.Y. Est., Powers & Trusts Law (McKinney Supp. 1979), allows a fiduciary," In addition to those expenses specifically provided for in this paragraph, to pay all other reasonable and proper expenses of administration from the property of the estate or trust."

Not only has the phrase "necessarily incurred" been replaced, but, more importantly, an expanded basis has been provided for recognition of selling expenses. Thus, subparagraph (5)(B) of paragraph 11–1.1(b) gives a fiduciary the power to sell any property not specifically disposed of "on such terms as in the opinion of the fiduciary will be most advantageous to those interested therein." Clearly, therefore, the fiduciary is empowered to incur any "reasonable and proper expenses" attendant upon a sale which he finds "advantageous to those interested

---

[7]Sec. 222 of the New York Surrogate's Court Act (13B Gilbert-Bliss Civil Practice of New York (1953)) provided:

"Payment of expenses incurred by representative.

"An executor, administrator, guardian or testamentary trustee may pay from the funds or estate in his hands, from time to time as shall be necessary, his legal and proper expenses of administration necessarily incurred by him * * * "

[8]N.Y. Est., Powers & Trusts Law sec. 11–1.1(b)(22) (McKinney 1967 & 1979 Supp.), provides:

(b) In the absence of contrary or limiting provisions in the court order or decree appointing a fiduciary, or in a subsequent order or decree, or in the will, deed or other instrument, every fiduciary is authorized:

\* \* \* \* \* \* \*

(22) In addition to those expenses specifically provided for in this paragraph, to pay all other reasonable and proper expenses of administration from the property of the estate or trust, including the reasonable expense of obtaining and continuing his bond and any reasonable counsel fees he may necessarily incur.

therein." The parties herein have agreed that the expenses at issue were reasonable. We conclude, therefore, that the allowability of the selling expenses at issue here is dependent, under New York State law, upon whether the sale was advantageous to the heir and not upon whether the sale was "necessary," as that term is utilized in section 20.2053–3, Estate Tax Regs.[9] See *In re Estate of Saphir*, 73 Misc. 2d 907, 343 N.Y.S.2d 20, 23, 27 (Kings County Surr. Ct. 1973); see also *Estate of Papson v. Commissioner*, 73 T.C. 290, 299 n. 9 (1979); *Estate of Vatter v. Commissioner*, 65 T.C. 633, 639 n. 5 (1975), affd. without opinion 556 F.2d 563 (2d Cir. 1976). Cf. *Matter of Estate of Larson*, 87 Misc. 2d 397, 385 N.Y.S.2d 720, 723 (Chautauqua County Surr. Ct. 1976).[10] There is no question here as to whether the terms of the sale were advantageous, since it can be presumed that Posen, acting in her capacity as administratrix, protected her own interests as sole heir. Thus, we find that the expenses of selling the apartment were allowable administration expenses of the estate under New York State law.

We turn then to the question of whether the expenses of selling the apartment qualify for deductibility under respondent's regulations. Petitioner argues that the selling expenses at issue satisfied the requirements of section 20.2053–3(a) and (d)(2), Estate Tax Regs., because the sale was necessary to pay estate taxes, to effect distribution, or to preserve the estate. Such arguments are not supportable.

First, Posen testified that obtaining funds for the payment of estate taxes was not a reason for the sale of the apartment. She sold the apartment, in her capacity as administratrix, because, as heir, she did not want to be burdened with an apartment in

[9]We think that our conclusion is compelled by the statutory language and is supported by the case law, although we are not unaware of the reviser's note to sec. 11.1–1(b)(23) N.Y. Est., Powers & Trusts Law (McKinney 1967) (now 11.1–1(b)(22)), which states that that section was designed to incorporate the substance of sec. 222 of the Surrogate's Court Act. See also *Estate of Smith v. Commissioner* , 510 F.2d 479, 481 n. 1 (2d Cir. 1975), affg. 57 T.C. 650 (1972).

[10]Although citing *Estate of Park v. Commissioner*, 475 F.2d 673 (6th Cir. 1973), revg. 57 T.C. 705 (1972), for the proposition that an administration expense is deductible if advantageous to the beneficiaries without any additional inquiry as to whether it was necessary to the estate, the Surrogate's Court in *Matter of Estate of Larson*, 87 Misc. 2d 397, 385 N.Y.S.2d 720 (Chautauqua County Surr. Ct. 1976), a New York State estate tax case, went on to find that the selling expenses were necessary to effect distribution. Apparently, the court considered such a finding necessary because of N.Y. Surr. Ct. Proc. Act sec. 1902 (McKinney 1967), which sets forth various conditions under which *real property* may be sold, and which is not relevant herein.

which she did not wish to live and which required high maintenance payments; nor did she want to hold the apartment as an investment since she considered such an investment risky.

In any event, the record shows that petitioner was not compelled to look to the proceeds of the sale of the apartment to pay its taxes. While the funds held by petitioner in cash and bank accounts free from restriction on withdrawal were not sufficient on October 23, 1975, the date petitioner made a payment of $30,800 for Federal estate taxes, to cover that amount after payment of all the estate's other liabilities, the additional amount needed could have been obtained by premature withdrawal of some of the funds held in time deposits. Although a penalty would have been incurred, such penalty would have only cost the estate a few hundred dollars, rather than the more than $7,000 of expenses incurred in the sale of the apartment.[11]

Second, sale of the property was not necessary to effect distribution of the estate. In the instant case, since the decedent died intestate, there were no testamentary directions which might have been violated by a distribution in kind. Nor was there any legal obstacle to such distribution. Under New York law, Posen, as administratrix, had the power to distribute the stock of the cooperative corporation in kind to herself as heir. See N.Y. Est., Powers & Trusts Law sec. 11.1–1(b)(21) (McKinney 1967), which specifically authorizes a fiduciary to make distributions in kind and represents a change in New York law from the common law rule that ordinarily such distribution

---

[11]The stipulation of facts in regard to the penalty is not sufficiently clear for us to make a more precise calculation as to the amount of the penalty. See note 4 *supra*.

A withdrawal of approximately $10,000 would have been sufficient to cover petitioner's needs. By Oct. 23, 1975, petitioner had spent or had available, without restriction, $41,338. (Day-of-deposit-to-day-of-withdrawal accounts: $17,305; checking account: $786; time deposit maturing on Aug. 2, 1975: $16,022; interest posted by June 30, 1975: $4,725; interest posted by Sept. 30, 1975: $2,500.) Petitioner's total disbursements, exclusive of the selling expenses and its Federal estate tax payments, were $18,645. Thus, without the sale of the apartment, petitioner would have needed an additional $8,107 to make a $30,800 Federal estate tax payment on Oct. 23, 1975. Assuming petitioner had paid at that time the full amount of the Federal estate tax liability as determined by respondent in the notice of deficiency ($33,327), it would have needed an additional $10,634.

Alternatively, petitioner could have requested a 1-month extension of time to pay a portion of the estate tax pursuant to sec. 6161(a)(2)(A), by which time, a time deposit of $20,020 would have matured. The interest charge thus incurred (approximately $61 ($\frac{1}{12}$ × 9% × $8,107), or $80 ($\frac{1}{12}$ × 9% × $10,634), under the alternate assumption of full payment of the amount of tax determined by respondent), would have been negligible compared to the costs of selling the apartment. See secs. 6601(a), 6621(a).

cannot be made absent express provision in the governing instrument or the consent of the beneficiaries. See N.Y. Est., Powers & Trusts Law, Practice Commentary (j) to sec. 11–1.1 (McKinney 1967); *In re Estate of Hoffman,* 98 Misc. 2d 732, 414 N.Y.S.2d 863 (Albany County Surr. Ct. 1979), holding that the unwillingness of the beneficiary to receive the distribution in kind was irrelevant. We find the instant situation more closely akin to those cases where we have found that the decedent's will contemplated a distribution in kind and where we have held, therefore, that a sale was not necessary to effect distribution. See *Estate of Smith v. Commissioner, supra; Estate of Swayne v. Commissioner,* 43 T.C. 190 (1964).

Third, although the cooperative apartment was non-income-producing property, its sale was not necessary to preserve the estate, since the financial drain on the estate's assets, which maintenance of the apartment would have entailed, could have been avoided by prompt distribution of the property to Posen, as heir. See *Estate of Park v. Commissioner,* 57 T.C. 705, 710 (1972), revd. 475 F.2d 673 (6th Cir. 1973). Petitioner argues that N.Y. Surr. Ct. Proc. Act sec. 1802 (McKinney 1967), which protects a fiduciary from liability for claims not presented within 7 months of the issuance of letters of administration, prevents an administrator from making distribution within such 7-month period. This argument ignores N.Y. Est., Powers & Trusts Law sec. 11–1.5(a) (McKinney 1967), which explicitly allows such a distribution where the assets are sufficient to pay known creditors and other obligations, as does the relevant case law. *In re Estate of Jacobsen,* 61 Misc. 2d 317, 306 N.Y.S.2d 290, 296 (N.Y. County Surr. Ct. 1969), affd. per curiam 33 App. Div. 2d 760, 306 N.Y.S.2d 297 (1st Dept. 1969); *In re Hostins's Estate,* 33 Misc. 2d 206, 223 N.Y.S.2d 893 (N.Y. County Surr. Ct. 1961), where the court indicated that a distribution in kind by a sole executrix-legatee to herself could well minimize expenses and thus constitute good administration.

Petitioner cites *Estate of Papson v. Commissioner, supra,* in support of its contention that expenses which transform unproductive property into productive property are necessary to preserve an estate. That case is not controlling herein, since some disposition of property (either sale of a shopping center held by the estate or rental of one of the stores in the shopping center) was necessary to generate funds to pay estate taxes.

Petitioner's reliance on *Estate of Vatter v. Commissioner, supra,* is also misplaced. In that case, the decedent's will provided for the distribution of the residuary estate to a testamentary trust. Three parcels of rental properties, which were old and required maintenance, were part of the residuary estate. Because the trustee of the testamentary trust—a bank neither equipped nor willing to provide maintenance—would not accept the parcels as part of the trust, they were sold by the executrix (decedent's wife). This Court upheld the deductibility of the expenses of sale as being necessary to effect distribution of the residuary estate, finding them to be allowable administration expenses both under New York law and respondent's regulations, even to the extent that the proceeds of the sales of two of the parcels and part of the proceeds of the sale of the third parcel were not needed to pay the estate's obligations for debts, expenses, and taxes. Synthesizing *Vatter* with the instant case and with *Estate of Park v. Commissioner, supra,* as decided by this Court, is not without its difficulties.[12] The fact of the matter is that, in *Vatter,* the recipient was a trustee bank which might well have sought to resist a distribution in kind through litigation (which could have involved expense to the estate). The presence of a third party in a key role and the potential implications flowing therefrom distinguish *Vatter,* both from *Park,* where only four children were involved in determining whether to receive the property in question left to them outright as part of the residuary estate, and from the instant case, where the decedent's daughter is both the sole administratrix and sole heir. Beyond this distinction, and perhaps of greater significance, is the fact that the issue of whether selling expenses pass muster under respondent's regulations lies in the recognition that a balancing of several reasons for a particular sale may be required and that such balancing may be influenced by variations in factual situations of each case. As we said in *Estate of Park v. Commissioner,* 57 T.C. at 709—

---

[12]In *Estate of Vatter v. Commissioner,* 65 T.C. 633 (1975), affd. without opinion 556 F.2d 563 (2d Cir. 1976), only a passing footnote reference was made to *Park* as decided by the Court of Appeals in the context of the validity of respondent's regulations—an issue which we made clear we did not think we were required to reach. See 65 T.C. at 639 n. 5. Similarly, no reference is made in *Vatter* to N.Y. Est., Powers & Trusts Law sec. 11–1.1(b)(21) (McKinney 1967), which specifically authorizes distributions in kind, modifying prior law which required authorization under the governing instrument or consent of the beneficiary.

However, we hasten to point out that a given expense associated with the administration of an estate may be incurred for several reasons. That is, the sale may have been initiated for the benefit of the heirs, but at the same time it may have been necessary to acquire cash to pay expenses, preserve the estate, or to effect a distribution. In such a situation it may be more appropriate to ignore the personal aspects of the transaction and allow the executor to deduct the incurred expenses.

We conclude that petitioner's sale of the cooperative apartment was not necessary within the meaning of the applicable regulations but rather was made solely for the benefit of Posen as heir. *Estate of Park v. Commissioner*, 57 T.C. at 709–710.

In reaching this conclusion, we think it important to emphasize that we are not unaware of the need for flexibility and the avoidance of mechanical counting of liquid assets in determining whether a particular expense meets the requirements of respondent's regulations. Cf. *Estate of Papson v. Commissioner, supra.* The estate herein was simple, and there were not likely to be any problems. For example, there were no assets whose valuation might produce difficulty on the estate tax audit nor any large deductions which might have been questioned on such audit, either of which possibilities might have caused the administratrix to be genuinely concerned about a substantial additional estate tax liability. There were no debts nor any indication that additional claims might be made upon the estate. No complex distribution to several beneficiaries was contemplated, and no third parties were involved in the adminstration of the estate. There was only one administratrix and one heir, both the same individual, and her testimony clearly revealed that the sale of the cooperative apartment was based upon her personal predilections. Finally, there were assets to pay debts, expenses, and taxes available from cash or cash equivalent in the form of bank deposits which had either matured or were about to mature; there was no question (nor have we suggested that there should be) of requiring the estate to dispose of marketable securities or of putting the estate in the position of foregoing what may have been favorable interest rates on time deposits. See *Hibernia Bank v. United States*, 581 F.2d 741, 744 n. 3 (9th Cir. 1978). Thus, in terms of compliance with respondent's regulations, the instant case has a narrow focus.

We are confronted, then, with a situation in which expenses of an estate allowable under State law do not meet the requirements for deduction from the gross estate set forth in the

regulations under section 2053(a)(2). Petitioner argues that such regulations are invalid to the extent that they set limits on deductibility beyond allowability under State law.

The section of the regulations applicable herein, section 20.2053–3(a) and (d)(2), Estate Tax Regs., has its roots in substantially similar regulations in effect since 1919. *Estate of Smith v. Commissioner*, 57 T.C. at 660. This Court has previously considered and upheld its validity in *Estate of Smith v. Commissioner, supra,* a court-reviewed opinion. See also *Estate of Swayne v. Commissioner, supra.* The Fifth and Ninth Circuits have also concluded that State law provides merely a threshold test for determining deductibility under section 2053(a)(2) and that the requirements of respondent's regulations must also be satisfied. *Hibernia Bank v. United States, supra; Pitner v. United States,* 388 F.2d 651 (5th Cir. 1967). The Sixth and Seventh Circuits, however, have taken the position that allowability of an expense under State law is per se determinative of deductibility as an administration expense under section 2053(a). *Estate of Jenner v. Commissioner,* 577 F.2d 1100, 1106 (7th Cir. 1978), revg. a Memorandum Opinion of this Court; *Estate of Park v. Commissioner,* 475 F.2d 673 (6th Cir. 1973), revg. 57 T.C. 705 (1972). The Second Circuit, to which an appeal in this case would lie, has not expressed an opinion as to the validity of the regulations. See *Estate of Smith v. Commissioner,* 510 F.2d at 483.[13]

Since the reversal of our decision in *Estate of Park v. Commissioner, supra,* no case has arisen in this Court presenting a conflict between the application of State law and respondent's regulations and requiring a reexamination of our prior position as to the validity of such regulations. See *Estate of Papson v. Commissioner,* 73 T.C. at 299 n. 9; *Estate of Webster v. Commissioner,* 65 T.C. 968, 979–980 (1976); *Estate of Vatter v. Commissioner,* 65 T.C. at 639.[14]

In *Estate of Park,* this Court disallowed the deduction of expenses of selling property where the sale was made solely for the personal benefit of the heirs and could have been distributed

---

[13]The Second Circuit found that State law and the regulations imposed similar requirements and, thus, did not have to reach the question of the validity of the regulations.

[14]See also *Estate of Carson v. Commissioner,* T.C. Memo. 1976–73.

in kind by the estate, eliminating the substantial costs of sale. In reversing our decision, the Sixth Circuit held that the literal language of the statute provides that State law alone governs deductibility under section 2053(a) and rejected our distinction between expenditures for the individual benefit of the beneficiaries, and those necessary to the estate. We think, unlike the Sixth Circuit and the Seventh Circuit, which followed *Estate of Park* in *Estate of Jenner v. Commissioner, supra,* that a distinction can and should be drawn between expenses necessary to the estate and those incurred solely for the benefit of the beneficiaries. While we acknowledge that any expense which serves to preserve the estate also benefits the beneficiaries, it does not follow that any expenditure which benefits the beneficiaries can properly be considered an expense of the estate. We agree with the analysis of the Ninth Circuit in *Hibernia Bank v. United States,* 581 F.2d at 746, that the policy of fairness, which dictates that the taxable estate not include assets not available for distribution, does not require that amounts expended merely for the benefit of the beneficiaries also be excluded. The Second Circuit implicitly acknowledged this distinction in *Estate of Smith v. Commissioner,* 510 F.2d at 482–483, where it raised the issue as to whether expenses "were in fact necessary to carry out the administration of the estate or merely prudent or advisable in preserving the interests of the beneficiaries."

More importantly, we do not believe that the literal language of section 2053(a) requires that State law alone govern deductibility of expenses from the gross estate nor that Congress intended that such be the case, as the dissenters in *Estate of Smith v. Commissioner,* 57 T.C. at 664–665, seem to have contended. The statute does not permit all expenses allowable under State law to be deducted, but only certain categories thereof. What is includable in each of these categories is a question of Federal law. *United States v. Stapf,* 375 U.S. 118, 130 (1963); *Pitner v. United States,* 388 F.2d at 659; see also *Estate of Smith v. Commissioner,* 510 F.2d at 482 n. 4. The regulations provide a definition of "administration expenses" as that term is used in section 2053(a)(2).

The interests served by State law may diverge significantly from the Federal interests underlying the estate tax. *Estate of Smith v. Commissioner,* 57 T.C. at 661–662. We do not believe

that Congress intended to allow the integrity of the Federal estate tax to be undermined by the vagaries of State law. See *Hibernia Bank v. United States*, 581 F.2d at 748 (Duniway, *J.*, concurring);[15] see also *Lyeth v. Hoey*, 305 U.S. 188, 194 (1938). Indeed, the consequences of a contrary position are highlighted by the situation herein, where a long-existing standard of measurement under local law requiring expenses of administration to be "necessarily incurred" has been changed to a standard of "advantageousness to those interested therein," i.e., the beneficiaries of the estate. We hold that section 20.2053–3(a) and (d)(2), Estate Tax Regs. (see p. 359 *supra*), supplies a definition of "administration expenses," as that term is used in section 2053(a)(2), which is both reasonable and consistent with the statute. See and compare *Bingler v. Johnson*, 394 U.S. 741, 749–750 (1969), where the Supreme Court stated that, in determining whether the conditions of section 117 had been met, a determination should first be made as to whether there was a "scholarship" or "fellowship." Section 20.2053–3(a) and (d)(2), Estate Tax Regs., is, therefore, valid.[16]

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT and NIMS , *JJ.*, did not participate in the consideration or disposition of this case.

GOFFE, *J.*, dissenting: I continue to respectfully dissent from the holding of the majority that the regulations are valid. During the 8 years that have elapsed since I dissented on this issue in *Estate of Smith v. Commissioner*, 57 T.C. 650, 662 (1972),

---

[15]See R. Stephens, G. Maxfield, S. Lind & D. Calfee, Federal Estate and Gift Taxation, secs. 503 [1], 5.03[3](4th ed. 1978).

[16]In so holding, we put to rest any question of the continued validity of *Estate of Sternberger v. Commissioner*, 18 T.C. 836, 842 (1952), affd. on other issues 207 F.2d 600 (2d Cir. 1953), revd. on other issues 348 U.S. 187 (1955), insofar as its language may be interpreted as limiting the applicability of respondent's determinations to the allowability of administrations as determined by local law. See *Estate of Vatter v. Commissioner*, 65 T.C. at 638–639; *Estate of Smith v. Commissioner*, 57 T.C. 650, 665 (1972) (dissenting and concurring opinion), affd. 510 F.2d 479 (2d Cir. 1974).

affd. 510 F.2d 479 (2d Cir. 1975), I have been more convinced than ever that we should hold the regulations invalid.

In the instant case, the administratrix is the sole beneficiary of the estate, which makes it easy to determine whether her actions benefit the estate or herself. In numerous cases, however, this line is not so clearly drawn. The responsibilities of a legal representative in handling the administration of an estate are mixed. He must not only preserve the assets of the estate but must also respect the rights of the beneficiaries. The regulations place the courts in the uneasy predicament of "second guessing" the legal representative. The regulations require the legal representative to justify in dollars and cents why he sold one asset instead of another in order to deduct the expenses of sale. Congress imposed no such responsibility upon the legal representative; it was created by the Commissioner in his regulations.

For reasons which I expressed in my concurring and dissenting opinion in *Estate of Smith v. Commissioner, supra,* I would hold that the selling expenses paid by the administratrix are deductible.

The majority states that section 2053(a) allows only certain categories of expenses which are allowable under State law and concludes that Congress did not intend that State law be the sole controlling factor. Section 2053(a)(2) allows all administration expenses as deductions with the only limitation being State law. It prescribes no categories; it is all-embracing. The Commissioner has not just defined "administration expenses" in section 20.2053–3(a) and (d)(2), Estate Tax Regs.; he has legislated a further requirement for deductibility and has done so without the benefit of any congressional intent. Under such circumstances, we should hold the regulations invalid. *Estate of Jenner v. Commissioner,* 577 F.2d 1100 (7th Cir. 1978), revg. a Memorandum Opinion of this Court; *Estate of Park v. Commissioner,* 475 F.2d 673 (6th Cir. 1973), revg. 57 T.C. 705 (1972). In my view, the validity of regulations should not turn upon whether the approach used is to define terms of the statute, to restate the law, or to use examples. *BBS Associates v. Commissioner,* 74 T.C. 1118 (1980).

The Commissioner may not use the vehicle of a Treasury regulation to rewrite a statute simply because he may feel that the scheme created by such statute could be improved upon. *United States v. Calamaro,* 354 U.S. 351, 357 (1957). The

regulatory power of the Commissioner is not the power to make law, but rather is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. "A regulation which * * * operates to create a rule out of harmony with the statute is a mere nullity." *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129 (1936). See also *Cartwright v. Commissioner*, 51 T.C. 869, 872 (1969); *Weidenhoff v. Commissioner*, 32 T.C. 1222 (1959); *Parker Oil Co. v. Commissioner*, 58 T.C. 985 (1972); *Morris v. Commissioner*, 70 T.C. 959 (1978); *Matheson v. Commissioner*, 74 T.C. 836 (1980); *BBS Associates v. Commissioner, supra; Tilford v. Commissioner*, 75 T.C. 134 (1980).

The majority somehow concludes that Congress could not have intended to allow the integrity of the Federal estate tax to be undermined by the "vagaries of State law," yet section 2053(a) specifies in no uncertain terms that administration expenses are deductible if allowable by the laws of the jurisdiction under which the estate is being administered. The estate tax law reeks with provisions causing the estate tax liability to vary according to the "vagaries of State law"; e.g., common law States versus community property States, credit for State death taxes, executor's fees, dower and courtesy interests, joint interests in property, claims against the estate, qualifying marital deduction. Accordingly, it is clear that congressional intent is to the contrary; i.e., the application of State law to the estate tax is inherent and it must be that way because State law varies so greatly and also because State law provides a safeguard to ensure that only the net value of the estate which passes to the beneficiaries is taxed. Because the selling expenses paid by the administratrix herein were allowable under New York law, they should be allowed as deductions in computing the Federal estate tax.

WILBUR, *J.*, dissenting: I respectfully dissent. The "necessary" requirement contained in the regulations is contrary to the clear and unequivocal language of section 2053(a) and is unsupported by the legislative history underlying the enactment of section 2053 under the 1954 Code. See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 91 (1954); S. Rept. 1622, to

accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 124–125 (1954). However, even assuming these regulations are a proper and reasonable interpretation of the statute, I believe that petitioner is entitled to deduct the expenses incurred in selling the cooperative apartment on the grounds that the sale was necessary to pay the decedent's debts and taxes and to preserve the estate.[1]

The majority opinion concedes that the estate was in need of approximately $10,000 in additional unrestricted cash on October 23, 1975, in order to pay expenses and taxes. However, the majority denies that the sale of a nonproductive, costly asset that nobody wanted was necessary on the theory that petitioner could have withdrawn principal prematurely from time deposits and, thereby, sustained penalties which would have been less than the selling expenses. This Monday-morning quarterbacking is an unwarranted intrusion into the discretionary powers of a fiduciary administering an estate.

The crucial factor is that there was not enough readily available cash on hand to pay the expenses and taxes *of the estate*. Something had to be liquidated. The choice was between withdrawing principal prematurely from time deposits and forfeiting interest already accrued or selling an unwanted non-income-producing asset, requiring large maintenance payments. Petitioner, as administratrix of the estate, chose to sell the apartment, and the proceeds of the sale were used to pay estate taxes. Clearly, then, the sale was necessarily incurred in administering the estate.[2]

That the sale also benefited the sole heir should not defeat the deductibility of the selling expenses. A necessary administration

---

[1] The inquiry as to whether expenses from a sale such as this one were necessarily incurred in administering the estate is also relevant in jurisdictions where State law requires an administration expense to be necessary. See 31 Am. Jur. 2d, Executors and Administrators, secs. 524, 527 (1967).

[2] Petitioner testified that the restrictions on the time deposits had nothing to do with her feelings about the apartment. The high maintenance payments in addition to other factors made the apartment completely unsuitable for her and assured its sale either by the estate or by the sole heir. However, that petitioner, as sole heir, would have eventually sold the apartment does not mean that the sale was not necessary to administer the estate. When paying off creditors of an estate, the fiduciary acts on behalf of the chosen beneficiaries. If he is faced with a shortage of disposable cash on hand to pay the estate's expenses, I think it perfectly appropriate that he consider the wishes of the beneficiaries in deciding which assets to dispose of and which to retain.

expense often produces dual benefits to both the estate and the beneficiaries. See *Pitner v. United States*, 388 F.2d 651, 660 (5th Cir. 1967); *Estate of Park v. Commissioner*, 57 T.C. 705, 709, revd. 475 F.2d 673 (6th Cir. 1973). Their interests are not antithetical and mutually exclusive, but generally coincide, for an estate is not administered abstractly, in a vacuum and without purpose, but for the object of the decedent's bounty—the heirs. After distribution under the procedures followed, the sole heir here ended up with the sale proceeds from the apartment and the other assets. The majority would have proceeded differently: "The additional amount needed could have been obtained by premature withdrawal of some of the funds held in time deposits. Although a penalty would have been incurred, such penalty would have only cost the estate a few hundred dollars."

Under the majority's approach, the beneficiary would still end up with the sales proceeds of the cooperative, plus the other assets, now diminished by a few hundred dollars. I see no reason why this sacrifice must be incurred for the privilege of paying more Federal estate taxes.

This case is readily distinguishable from the *Estate of Park v. Commissioner, supra,* where, in addition to selling two pieces of real estate at the request of the heirs, the administrator also redeemed approximately $25,000 in savings bonds which, coupled with the cash on hand, was more than enough to pay the expenses and taxes of the estate. Indeed, this Court in *Estate of Park v. Commissioner, supra,* explicitly rejected the argument that absent the redemption of the savings bonds, the administrator ought to have used certain "cash-like" assets first to pay the obligations of the estate. Rather, the Court reasoned that "An executor should be permitted to sell what he wants to cover expenses. He is subject to the control of the Probate Court and is therefore responsible for his actions." *Estate of Park v. Commissioner, supra* at 710 n. 4.

The majority makes many suggestions as to what petitioner, as administratrix of her .mother's estate, could have done to avoid selling the apartment and incurring selling expenses at the estate level. She could have prematurely withdrawn principal from time deposits and forfeited the accrued interest. She could have requested an extension of time to pay taxes and incurred

interest charges. She could have distributed the apartment to herself as sole heir to avoid high maintenance costs.[3] None of this addresses what I consider to be the crucial consideration, that there simply was insufficient cash to pay the expenses and taxes of the estate, and that the proceeds from the asset the administratrix chose to sell was in fact applied toward the debts of the estate. The holding of the majority sets up a priority as to which assets are to be liquidated dependent upon the relative costs of their disposal which I believe to be an inappropriate interference with fiduciary responsibilities and obligations.[4] Therefore, I dissent.

DAWSON, GOFFE, and HALL, *JJ.*, agree with this dissent.

CHABOT, *J.*, dissenting: I agree with the majority that paragraphs (a) and (d)(2) of section 20.2053–3, Estate Tax Regs., are valid, in that a Federal standard may properly be established in order to determine whether an amount is described in one of

---

[3]In stating that petitioner could have distributed that apartment to herself promptly, to avoid the high maintenance costs at the estate level, the majority opinion relies on N.Y. Est., Powers & Trusts Law sec. 11–1.5(a) (McKinney 1967). The relevant part of that section reads as follows:

Sec. 11–1.5. Payment of testamentary dispositions or distributive shares

(a) Subject to his duty to retain sufficient assets to pay administration and reasonable funeral expenses, debts of the decedent and all taxes for which the estate is liable, a personal representative may, but, except as directed by will or court decree or order, *shall not be required to*, pay any testamentary disposition or distributive share * * * before the expiration of seven months from the time letters testamentary or of administration are granted. [Emphasis supplied.]

In proposing that petitioner ought to have promptly distributed the apartment rather than sell it to preserve it for the estate, it seems to me that the majority is doing exactly what sec. 11–1.5 explicitly prohibits—requiring a distribution before the expiration of 7 months, the period of time during which claims must be presented in order to hold the fiduciary liable. See N.Y. Surr. Ct. Proc. Act sec. 1802 (McKinney 1967).

[4]I find the implication of the majority's reasoning disturbing. Suppose a man dies intestate owning primarily two assets: a rare coin collection and his residence. The rare coin collection has a recognized fair market value, is easily marketable, and will involve minimal selling costs, whereas the sale of the house will involve several thousand dollars in brokerage fees. The sole heir has absolutely no desire for the house, but would very much like to keep the coin collection for a special remembrance of his father's life-long efforts. When the executor needs cash to pay the estate's creditors, the son requests him to sell the house. Under the majority's reasoning, if the executor complies with the request, no deduction should be allowed for the selling expenses because the sale was based on the "personal predilections" of the heir rather than being necessarily incurred for the benefit of the estate—the coin collection could have been disposed of much more cheaply. Even a sacrifice sale of the collection might be required if the sacrifice involved—in the words of the majority—"only a few hundred dollars."

the paragraphs of section 2053(a) of the Internal Revenue Code of 1954.

However, I agree with Judge Wilbur's analysis of how these regulations should be applied to the facts of the instant case, and I join in so much of his dissent as would hold that the expenses here in dispute are deductible because they were necessary to pay the decedent's debts and taxes and to preserve the estate.